# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

**WENDY FLETCHER**


**JAMES HUGHES**

|  |  |
|---|---|
| | **COMPLAINT**<br>**AND JURY DEMAND** |

Plaintiffs,

Civil Action No. _____ 8:22-cv-314 (LEK/DJS)

v.

**VILLAGE OF LAKE PLACID,**
2693 Main Street,
Lake Placid, New York 12946

**CRAIG RANDALL**, individually and in his
capacity as Mayor of the Village of Lake Placid,
2693 Main Street,
Lake Placid, New York 12946

**ART DEVLIN**, individually and in his capacity
as Deputy Mayor for the Village of Lake Placid,
2693 Main Street,
Lake Placid, New York 12946

**PETER HOLDERIED**, individually and in his
capacity as Trustee for the Village of Lake
Placid,
2693 Main Street,
Lake Placid, New York 12946

**JASON LEON**, individually and in his capacity
as Trustee for the Village of Lake Placid,
2693 Main Street,
Lake Placid, New York 12946

**JANET BLISS**, individually and in her capacity
as the Village Attorney for the Village of Lake
Placid,
2693 Main Street,
Lake Placid, New York 12946

**ANITA ESTLING**, individually and in her
capacity as the Village of Lake Placid Clerk,
2693 Main Street,
Lake Placid, New York 12946

**BRAD HATHAWAY**, individually and in his
capacity as the Superintendent for the Village of
Lake Placid Highway Department,
5648 Cascade Road #1,
Lake Placid, New York 12946

**NORTHWOOD SCHOOL, LAKE PLACID,
NEW YORK**,
92 Northwood Road,
Lake Placid, New York 12946

**MICHAEL MAHER**, individually and in his
capacity as Headmaster for Northwood School
92 Northwood Road,
Lake Placid, New York 12946

**THOMAS BRODERICK**, individually and in
his capacity as Assistant Headmaster for
Northwood School,
92 Northwood Road,
Lake Placid, New York 12946

**JAMES BROOKS**, individually and in his
capacity as a Board Member and Attorney for
Northwood School,
92 Northwood Road,
Lake Placid, New York 12946

**BETTE & CRING CONSTRUCTION
GROUP, LLC**
22 Century Hill Drive #201,
Latham, New York 12110

**MATTHEW BETTE**, individually and in his
capacity as an Owner of Bette & Cring
Construction Group, LLC and as a Trustee for
Northwood School,
22 Century Hill Drive #201,
Latham, New York 12110

**DICK WHITE**, individually and in his capacity
as Division Manager for Bette & Cring
22 Century Hill Drive #201,
Latham, New York 12110

**PATRICK GEBBIE**, individually and in his
capacity as Project Manager for Bette & Cring,
22 Century Hill Drive #201,
Latham, New York 12110

**JOHN DOE**, who is presently known as a male
named "Ken," individually and in his capacity as
Project Superintendent for Bette & Cring,
22 Century Hill Drive #201,
Latham, New York 12110

**O'NEIL CONTRACTING,
BLOOMINGDALE, NEW YORK**
68 Main Street,
Bloomingdale, New York 12913

**JOHN O'NEIL**, individually and in his capacity
as owner for O'Neil Contracting,
68 Main Street,
Bloomingdale, New York 12913

**BURKE EXCAVATION DEMOLITION,
INC., ABN: JEDA ENVIRONMENTAL,
MASSENA, NEW YORK**,
273 S. Grasse River Road,
Massena, New York 13662

**SHAWN BURKE**, individually and in his
capacity as Owner for Burke Excavation,
273 S. Grasse River Road,
Massena, New York 13662

**JODI BURKE**, individually and in his capacity
as Owner for Burke Excavation,
273 S. Grasse River Road,
Massena, New York 13662

**JACK RUGAR CUSTOM PAINTING,
KEESEVILLE, NEW YORK**
30 Boulder Ledge Way
Keeseville, New York 12944

**JACK RUGAR**, individually and in his capacity
as Owner for Jack Rugar Custom Painting,
30 Boulder Ledge Way
Keeseville, New York 12944

**SHERRI RUGAR**, individually and in her
capacity as Owner for Jack Rugar Custom
Painting
30 Boulder Ledge Way
Keeseville, New York 12944

Defendants.

Plaintiffs, Wendy Fletcher and James Hughes (collectively referred to as "Plaintiffs"), by their attorneys, Rupp Baase Pfalzgraf Cunningham LLC, as and for their complaint against defendants, the Village of Lake Placid, Craig Randall, Art Devlin, Peter Holderied, Janet Bliss, Jason Leon, Anita Estling, Brad Hathaway, Northwood School, Lake Placid, New York, Michael Maher, Thomas Broderick, James Brooks, Bette & Cring Construction Group, LLC, Matthew Bette, Dick White, Patrick Gebbie, John Doe, who is presently known as a male named "Ken," O'Neil Contracting, Bloomingdale, New York, John O'Neil, Burke Excavation Demolition, Inc., ABN: Jeda Environmental, Massena, New York, Shawn Burke, Jodi Burke, Jack Rugar Custom Painting, Keeseville, New York, Jack Rugar, and Sherri Rugar (collectively referred to as "Defendants"), allege as follows:

## PRELIMINARY STATEMENT

1.      The Village of Lake Placid and the other defendants named herein have long ignored Plaintiffs' safety concerns regarding Plaintiffs' ability to access Main Street from their property.  Defendants failed in their duty to preserve Ms. Fletcher's mobility and access from her property to the public walkway during the Northwood School construction project

4

despite having actual and/or constructive knowledge of                           y and

approved Northwood School's planned construction activities which did not comply with ADA

requirements.

2.      The Northwood School construction project, under the supervision and at

the direction of the named defendants, was a burden to the public with nonconforming ADA

barriers installed on public walkways and streets which limited access for the physically

disabled, i                        In addition to the failure to ensure Northwood School's

planned construction activities complied with ADA requirements, Defendants' uncontained

construction activities immediately adjacent to Plaintiffs' home and property unlawfully

interfered with and intruded on Plaintiffs' property in violation of their Constitutionally-

protected right to property and the full enjoyment of their property rights.  This lawsuit is

intended to protect and vindicate those Constitutional rights that have been trammeled by an

inattentive and deliberately indifferent local government with the assistance of private

contractors who have and continue to distribute potentially harmful construction debris and

waste onto Plaintiffs' property.


**JURISDICTION**

3.      This action is brought under 42 U.S.C. §§ 1983 and 1988 and under the

Fourth, Fifth, and Fourteenth Amendments of the United States Constitution.

4.      This Court has subject matter jurisdiction over all claims pursuant to

28 U.S.C. §§ 1331, 1343, and 1983.

5.      Plaintiffs further invoke this Court's pendent jurisdiction, pursuant to

28 U.S.C. § 1367(a), over any and all state law claims and as against parties that are so related to

claims in this action within the original jurisdiction of this Court that they form part of the same case or controversy.

## VENUE

6.      Pursuant to 28 U.S.C. § 1391(b), venue is proper in the Northern District of New York because the events forming the basis of Plaintiffs' complaint occurred in this District.

## PARTIES

### A. **Plaintiffs.**

7.      Plaintiff, Wendy Fletcher, was and is a citizen of New York State who at all relevant times resided at

8.      Ms. Fletcher is a 50(+)-year old woman who was diagnosed with

9.      Ms. Fletcher was

10.      Plaintiff, James Hughes, was a citizen of New York State who at all relevant times resided at                                         Currently, and as of June 30, 2021, Mr. Hughes is a resident of the Commonwealth of Virginia for business purposes.

11.      Mr. Hughes is Ms. Fletcher's partner and they have lived together in their home at                    for years.

12.      Mr. Hughes is a commercial construction professional with 35 years in the commercial construction industry.  His expertise includes complex construction means &

6

Case 8:22-cv-00314-LEK-DJS   Document 1   Filed 04/01/22   Page 7 of 55

methods, building codes, construction safety, and compliance with the Americans with Disabilities Act of 1990 ("ADA").  At the time of the incidents described herein, Mr. Hughes held the position of Project Executive and Division Manager for a $1.5 Billion International Firm that specializes in complex high-rise building exteriors.

## B. **Defendants**.

13.     Defendant, the Village of Lake Placid, was and is a municipal corporation duly organized and existing under the laws of the State of New York and has a business address at 2693 Main Street, Lake Placid, New York 12946.

14.     Defendant, the Village of Lake Placid, through its officers, agents, employees, and/or specialized units, promulgate, implement, review, and/or enforce, as policymakers, certain policies regarding the conduct and actions of individuals employed by the Village of Lake Placid, including defendants Craig Randall, Art Devlin, Peter Holderied, Janet Bliss, Jason Leon, Anita Estling, and Brad Hathaway.

15.     Defendant, Craig Randall, was and is a citizen of New York State at all relevant times.  Defendant Randall was employed by the Village of Lake Placid, and was, at all times hereinafter mentioned, acting within the scope of his employment and official capacity as Mayor of the Village of Lake Placid.

16.     As Mayor for the Village of Lake Placid, defendant Randall was responsible for the hiring, training, supervision, discipline, and conduct of individuals employed by the Village of Lake Placid, and was further responsible for setting, reviewing, and/or enforcing the policies and regulations for the Village of Lake Placid.  Defendant Randall also

was responsible for ensuring that Village of Lake Placid employees and agents obey all applicable state and federal laws.

17.     Upon information and belief, at all times relevant, defendant Randall was a policymaker for the Village of Lake Placid in all matters that are alleged herein, and defendant Randall participated in the promulgation of policies and/or customs for the Village of Lake Placid that caused the multiple violations of Plaintiffs' rights secured by state and federal law. Defendant Randall directly was responsible for policy and custom implementation (in whole or in part) including the Village of Lake Placid's refusal to address Plaintiffs' reasonable safety concerns regarding the Northwood School construction project.  In addition, defendant Randall is being sued in his individual capacity for damages caused by his actions and/or conduct.

18.     Defendant, Art Devlin, was and is a citizen of New York State at all relevant times.  Defendant Devlin is employed by the Village of Lake Placid, and was, at all times hereinafter mentioned, acting within the scope of his employment and official capacity as Deputy Mayor of the Village of Lake Placid.  Upon information and belief, defendant Devlin is the current Mayor for the Village of Lake Placid.

19.     As Deputy Mayor of the Village of Lake Placid, defendant Devlin was responsible for the hiring, training, supervision, discipline, and conduct of individuals employed by the Village of Lake Placid, and was further responsible for setting, reviewing, and/or enforcing the policies and regulations for the Village of Lake Placid.  Defendant Devlin also was responsible for ensuring that Village of Lake Placid employees and agents obey all applicable state and federal laws.

20.     Upon information and belief, at all times relevant, defendant Devlin was a policymaker for the Village of Lake Placid in all matters that are alleged herein, and defendant

Devlin participated in the promulgation of policies and/or customs for the Village of Lake Placid that caused the multiple violations of Plaintiffs' rights secured by state and federal law. Defendant Devlin directly was responsible for policy and custom implementation (in whole or in part) including the Village of Lake Placid's refusal to address Plaintiffs' reasonable safety concerns regarding the Northwood School construction project. In addition, defendant Devlin is being sued in his individual capacity for damages caused by his actions and/or conduct.

21. Defendant, Peter Holderied, was and is a citizen of New York State at all relevant times. Defendant Holderied was employed by the Village of Lake Placid, and was, at all times hereinafter mentioned, acting within the scope of his employment and official capacity as a Trustee for the Village of Lake Placid. In addition, Mr. Holderied is being sued in his individual capacity for damages caused by his actions and omissions.

22. Defendant, Jason Leon, was and is a citizen of New York State at all relevant times. Defendant Leon was employed by the Village of Lake Placid, and was, at all times hereinafter mentioned, acting within the scope of his employment and official capacity as a Trustee for the Village of Lake Placid. In addition, Mr. Leon is being sued in his individual capacity for damages caused by his actions and omissions.

23. Defendant, Janet Bliss, was and is a citizen of New York State at all relevant times. Defendant Bliss was employed by the Village of Lake Placid, and was, at all times hereinafter mentioned, acting within the scope of her employment and official capacity as the Village Attorney for the Village of Lake Placid. In addition, Ms. Bliss is being sued in her individual capacity for damages caused by her actions and omissions.

24. Defendant, Anita Estling, was and is a citizen of New York State at all relevant times. Defendant Estling was employed by the Village of Lake Placid, and was, at all

9

times hereinafter mentioned, acting within the scope of her employment and official capacity as the Village Clerk for the Village of Lake Placid.  In addition, Ms. Estling is being sued in her individual capacity for damages caused by her actions and omissions.

25.      Defendant, Brad Hathaway, was and is a citizen of New York State at all relevant times.  Defendant Hathaway was employed by the Village of Lake Placid, and was, at all times hereinafter mentioned, acting within the scope of her employment and official capacity as the Superintendent for the Village of Lake Placid Highway Department.  In addition, Defendant Hathaway is being sued in his individual capacity for damages caused by his actions and omissions.

26.      Defendant, Northwood School, Lake Placid, New York ("Northwood School"), is a private boarding school with a principal place of business located at 92 Northwood Road, Lake Placid, New York 12946.

27.      Defendant, Michael Maher, is and was the Northwood School Headmaster at all relevant times.  Upon information and belief, Mr. Maher was and is a citizen of New York State at all relevant times.

28.      In his position as Northwood School Headmaster, Mr. Maher directed and controlled the scope, location, and extent of the construction activities for the Northwood School Main Street Campus.  Mr. Maher was also responsible for the hiring and supervision of contractors and subcontractors who conducted the Northwood School construction activities, as well as addressing Plaintiffs' safety concerns about the uncontained construction activities at the Northwood School Main Street Campus construction site.

29.     Defendant, Thomas Broderick, is and was the Northwood School Assistant Headmaster at all relevant times.  Upon information and belief, Mr. Broderick was and is a citizen of New York State at all relevant times.

30.     In his position as Northwood School Assistant Headmaster, Mr. Broderick was ultimately responsible for all of Northwood School's construction activities.  Indeed, Mr. Broderick previously has stated that he directed the daily construction activities for Northwood School's Main Street Campus Renovation.  Upon information and belief, such authority was granted to him by Northwood School's Board of Trustees.

31.     Defendant, Bette & Cring Construction Group, LLC ("Bette & Cring"), was and is a domestic limited liability company with a principal place of business located at 22 Century Hill Drive #201, Latham, New York 12110.

32.     Bette & Cring was assigned the role of general contractor for the Northwood School construction project.  In that role, Bette & Cring and its employees were responsible for directing all subcontractors in their daily activities.

33.     Defendant, Matthew Bette, was and is at all relevant times a citizen of the State of New York.  Upon information and belief, Mr. Bette was and is an owner of Bette & Cring as well as a Trustee for Northwood School at all relevant times.

34.     Defendant, Dick White, was and is at all relevant times a citizen of the State of New York.  Upon information and belief, Mr. White was and is a Division Manager who was ultimately responsible for the Northwood School construction project for Bette & Cring at all relevant times.

35.     Defendant, Patrick Gebbie, was and is at all relevant times a citizen of the State of New York.  Upon information and belief, Mr. Gebbie was and is a Project Manager who

was involved in supervising and directing the Northwood School construction project for Bette
& Cring at all relevant times.

36.     Defendant, John Doe, who is presently known as a male named "Ken,"
was and is at all relevant times a citizen of the State of New York.  Upon information and belief,
"Ken" was and is a Project Superintendent who was the on-site manager for Bette & Cring at the
Northwood School Main Street Campus Renovation at all relevant times.

37.     Defendant, O'Neil Contracting, Bloomingdale, New York ("O'Neil
Contracting"), was and is a private company with a principal place of business located at
68 Main Street, Bloomingdale, New York 12913.  O'Neil Contracting was assigned the role of
subcontractor for the Northwood School construction project.

38.     Defendant, John O'Neil, was and is at all relevant times a citizen of the
State of New York.  Upon information and belief, Mr. O'Neil was and is an owner of O'Neil
Contracting at all relevant times.

39.     Defendant, Burke Excavation Demolition, Inc., ABN: Jeda
Environmental, Massena, New York ("Burke Excavation"), was and is a domestic corporation
with a principal place of business located at 273 S. Grasse River Road, Massena, New York
13662.  Burke Excavation was assigned the role of subcontractor for the Northwood School
construction project.

40.     Defendant, Shawn Burke, was and is at all relevant times a citizen of the
State of New York.  Upon information and belief, Mr. Burke was and is an owner of Burke
Excavation at all relevant times.

41.     Defendant, Jodi Burke, was and is at all relevant times a citizen of the State of New York.  Upon information and belief, Ms. Burke was and is an owner of Burke Excavation at all relevant times.

42.     Defendant, Jack Rugar Custom Painting, LLC ("Jack's Custom Painting"), was and is a domestic limited liability company with a principal place of business located at 30 Boulder Ledge Way, Keeseville, New York 12944.  Jack's Custom Painting was assigned the role of subcontractor for the Northwood School construction project.

43.     Defendant, Jack Rugar, was and is at all relevant times a citizen of the State of New York.  Upon information and belief, Mr. Rugar was and is an owner of Jack's Custom Painting at all relevant times.

44.     Defendant, Sherri Rugar, was and is at all relevant times a citizen of the State of New York.  Upon information and belief, Ms. Rugar was and is an owner of Jack's Custom Painting at all relevant times.


**FACTUAL BACKGROUND**

A.  **The Property.**

45.     In 1957, Wendy Fletcher's great aunts, the Shehadi Sisters ("Shehadi Sisters"), purchased certain property that included Plaintiffs' current lot as well as the land parcel where the current Northwood School building is situated (the "Property").

46.     In 1984, the Shehadi Sisters subdivided the Property, retaining the parcel where the home was situated as well as the land parcels to the east and south of where the current Northwood School building is situated.  As part of the subdividing process, the Shehadi Sisters also sold the land where the current Northwood School building is situated (hereinafter referred

13

to as the "Northwood Lot"), to a local buyer, the "Turner Family." The Shehadi Sisters retained a 4-foot pedestrian easement over the Turner property after the conveyance. For ease of reference, the property retained by the Shehadi Sisters post-conveyance to the Turner family will be referred to as the "Fletcher Lot."

47.     Plaintiffs' current home is and was at all relevant times situated on the Fletcher Lot.

48.     From 1999-2009, Ms. Fletcher assisted the Shehadi Sisters with their affairs as both women were in their mid-80s. From 2009-2011, Ms. Fletcher retained a limited power of attorney for Elizabeth Shehadi until her passing. Thus, from 1999-2011, Ms. Fletcher had specific and actual knowledge of the contours of the Shehadi Sisters' property rights regarding the Property post-conveyance to the Turner family.

49.     In 2012, Ms. Fletcher inherited the Fletcher Lot, including all property documents regarding the Shehadi/Turner property transfer in 1984.

50.     In December 2015, the Turners sold the Northwood Lot to a seller who, upon information and belief, then donated the land and building to Northwood School as a charitable donation.

51.     From 2012 to 2019, Plaintiffs maintained a pedestrian easement on the Northwood Lot by cutting grass and removing snow. Plaintiffs continued to maintain the pedestrian easement until they were barriered in April 2019 when the Northwood School construction project began.

B. **Plaintiffs' Construction and the Northwood School Construction Project.**

52.     In December 2015, the Plaintiffs started construction of approximately a 20' x 40' building on the Fletcher Lot and adjacent to the Main Street walkway.  Plaintiffs intend to use this new building to open a new business.

53.     Around that same time, Thomas Broderick, a representative for Northwood School, met with Mr. Hughes and notified him of new construction and renovation efforts planned for Northwood School.  Ms. Fletcher called Defendant Michael Maher to welcome Northwood School as neighbors, and she shared her contact information with Mr. Maher.  Defendant Maher called back and left a voice message thanking Ms. Fletcher for her phone call.

54.     From December 2015 to mid-2016, Mr. Hughes would meet with Mr. Broderick to coordinate the planned construction efforts for Northwood School with the Plaintiffs' construction on the Fletcher lot.

55.     As part of Northwood School's construction and renovation planning, Mr. Broderick and other school officials and/or contractors would enter the Fletcher Lot without notification or approval.

56.     In June and July of 2016, the Plaintiffs told Mr. Broderick not to use or enter the Fletcher Lot without approval from the Plaintiffs.  Mr. Broderick responded that he did not need approval to enter and use the Fletcher Lot.

57.     In a letter dated August 29, 2016, Northwood School attorney and Board Member, James Brooks, Esq., made certain disputable claims regarding the Fletcher Lot and threatened to remove the Plaintiffs' water supply.

58.     Plaintiffs responded by letter dated September 2, 2016 that the claims of
Northwood School regarding the Plaintiffs' property rights were incorrect and cautioned the
School not to remove the Plaintiffs' water supply.

59.     Despite these warnings, the Defendants in fact turned off the water supply
to the Fletcher Lot *three times* during the Northwood School construction project. Additionally,
the water supply to the building currently under construction—which the Plaintiffs intend to use
to open a new business (*see* ¶52, supra)—no longer flows.

60.     In October 2016, Mr. Broderick directed a waste company to place a
dumpster on the Fletcher Lot. When the Plaintiffs protested Northwood School's illegal use of
the Fletcher Lot, James Brooks called the police and demanded that Ms. Fletcher be arrested. At
the time of the Defendants' request to arrest Ms. Fletcher, she was suffering from

61.     In November 2016, Mr. Broderick addressed the Town of North Elba Joint
Review Board in a meeting to present the renovation construction plans for Northwood School.
Within Mr. Broderick's submission documents was a photograph that included

62.     In November 2016, the Plaintiffs delivered by certified mail a letter to
Northwood School, Michael Maher, Thomas Broderick, and Joseph Burnah (Director of
Facilities for Northwood School), Bette & Cring, Peter Bette (a member of Bette & Cring),
O'Neil Contracting, and John O'Neil, which notified them of their trespass on the Fletcher Lot.
That letter included a copy of the Notarized Purchased Agreement for the Shehadi/Turner
purchase in 1984, the original purchaser of the land on which Northwood School currently sits.
No access to the Fletcher Lot was conveyed in that sale. In addition, the letter disclosed

The Village of Lake Placid Police Department and Code Enforcement Department also received copies of the letter and enclosure documents.

63.     On March 11, 2017, Northwood School announced its plan to demolish the Main Street Building in a newspaper article.[1]  A key point made in the article was that the construction would be directed by professionals, "not school teachers."  However, in an affidavit later submitted by Defendant Thomas Broderick, he averred that he managed the daily activities of the Northwood School construction project.

64.     On March 17, 2017, Mr. Hughes wrote an op-ed for the same newspaper on the merits of preserving Northwood School's building versus demolishing it based on his professional construction experience.[2]

65.     In April 2017, the Plaintiffs made the difficult decision to place their construction project on hold until 2019 after Northwood School announced in the local newspaper that they will demolish their building and construct a new building.

66.     On May 22, 2017, Mr. Hughes met at Northwood School's Main Street Campus to discuss Northwood School's planned new construction and renovation activities. Those in attendance for said meeting included, inter alia, Mr. Broderick, Michael Maher, Bette & Cring Division Manager, Dick White, and Code Enforcement Officer Michael Orticelle.

---

[1] *See* https://www.adirondackdailyenterprise.com/news/local-news/2017/03/northwood-will-demo-former-store-interior-on-main-street/; *see also* https://www.adirondackdailyenterprise.com/news/local-news/2017/03/northwood-explains-decision-to-demolish-main-street-building/

[2] *See* https://www.adirondackdailyenterprise.com/opinion/guest-commentary/2017/03/renovate-rather-than-demolish/

67.     During this meeting, Mr. Hughes proposed a means and methods plan for Northwood School's new construction and renovation project that included no walkway closures, compliant overhead pedestrian protection, and conforming ADA practices.

68.     On November 14, 2018, Mr. Hughes sent an email to the Town of North Elba Code Enforcement Officer notifying him of the Plaintiffs' plans to resume their construction project in "early spring 2019."

69.     Plaintiffs planned a trip to Virginia for the holidays and the birth of their grandson.  Prior to leaving on that trip, the Plaintiffs installed signage and fencing to notify persons attempting to enter or use the Fletcher lot of the property lines between Northwood Lot and Fletcher Lot.

70.     On December 19, 2018, Northwood School Board Member Jennifer Holderied Webb passed three (3) no trespassing signs and a fence to enter and remain on the Fletcher lot.  This trespass was captured on surveillance footage.

71.     Plaintiffs viewed the surveillance footage and contacted the Village of Lake Placid police department regarding the trespass.

72.     On January 17, 2019, Mr. Broderick was seen on surveillance walking to the edge of the Northwood Lot observing the Fletcher Lot.  Upon information and belief, Mr. Broderick had actual knowledge of the multiple trespasses by Village of Lake Placid and Northwood School employees and/or agents.

73.     When Mr. Hughes returned to the Plaintiffs' New York home, in January 2019, Mr. Hughes signed a criminal trespass complaint against Jennifer Holderied Webb.

74.     In January 2019, the Village Zoning Board of Appeals approved Northwood School's new plan to renovate the Main Street School Building rather than demolish the building.

75.     In March 2019, on the podcast "We Are Lake Placid," Mr. Broderick discussed ADA requirements for the Northwood School construction project. Thus, Defendants had actual knowledge of their requirement to comply with ADA requirements. Upon information and belief, that podcast episode was not released until May 22, 2019 despite being recorded in March 2019.

76.     In addition to the Defendants having actual knowledge pertaining to their duty to comply with ADA requirements, the Defendants had actual knowledge regarding ~~                 ~~.y. For example, in April 2019, Village Attorney Janet Bliss and Northwood Attorney/Board Member James Brooks exchanged multiple letters discussing ~~                 ~~ at the start of the Northwood School construction project. These letters were submitted as an exhibit as part of a separate litigation regarding the Northwood School construction project.

## C.  Parking Issue.

77.     In addition to failing to remedy Plaintiffs' safety concerns for the Northwood School construction project, the Village of Lake Placid and its employees and agents have failed to remedy Plaintiffs' concerns regarding a Village-owned parking space on Main Street that abuts the south of Plaintiffs' driveway.

78.     When a vehicle is parked in the Village-owned parking space, it obstructs Plaintiffs' safe view of oncoming traffic. From March 26, 2018 to April 11, 2018, Mr. Hughes

repeatedly made requests to the Village Board that simple traffic devices be installed to limit the danger from the obstruction. Those requests were ignored by the Village Board.

79.     Because his requests for simple traffic devices were repeatedly ignored by the Village Board, on May 28, 2018, Mr. Hughes attended a Village Board Meeting to discuss the dangerous Main Street parking space next to his driveway.

80.     During the COVID-19 pandemic, the Village Board repeatedly made plans to close entire lanes of travel on Main Street to allow restaurants to have outdoor dining, but the Village Board refused to even entertain a partial limiting of one parking space to remedy Plaintiffs' safety concerns.  This unfair and disparate treatment is a violation of Plaintiffs' Constitutional rights secured by the Equal Protection Clause of the Fourteenth Amendment.

81.     In a September 2020 public meeting, Mayor Randall referred to Plaintiffs' grievances over the parking space issue as "brutal."  Mayor Randall's comments came after Plaintiffs sent to him and the other Village Board members a video of a delivery truck driver who obstructed the parking space, yelled at Mr. Hughes who confronted him about the obstruction, and made a masturbation gesture towards Mr. Hughes.

82.     Additionally, currently underway is an infrastructure upgrade project for Main Street that was approved by the Village of Lake Placid.  The contract documents and plans for that project were designed in such a way that it would prevent the Plaintiffs from being able to exit the driveway with their vehicles to enter onto Main Street.

83.     Prior to starting the project, Mr. Hughes provided the Village with detailed vehicle sizes that the Plaintiffs utilize and park in their driveway.  Therefore, the Defendants had actual knowledge of the amount of space Plaintiffs would need to enjoy unobstructed use of their driveway.

84.     Despite this actual knowledge, the Village redesigned the Plaintiffs'
driveway without giving any consideration whatsoever to the vehicle path analysis provided by
Mr. Hughes.  Upon completion of the infrastructure upgrade project for Main Street, the
Plaintiffs will be prevented from parking work vehicles for their projects and delivery that
currently fit in the driveway, but no longer will fit upon completion of the project.

85.     Moreover, the contract documents and plans for the Main Street
infrastructure upgrade project show that a new waterline would be installed that would service
the Plaintiffs' property exclusively.  No such waterline previously existed.

86.     Mr. Hughes met with Defendant Brad Hathaway on September 8, 2021 to
coordinate this new waterline.  Defendant Hathaway told Mr. Hughes that the new waterline was
included in the project plans in error; and further told Mr. Hughes that if he wanted a new
waterline, Plaintiffs would have to dig up the Village walkway that abuts Main Street and
connect the new waterline to a waterline that is immediately to the south of the Fletcher Lot.

87.     Mr. Hughes expressed his disagreement with Defendant Hathaway, as a
new waterline clearly was shown in the project plans for the Main Street infrastructure upgrade
project.  Nevertheless, Defendant Hathaway and the Village Board have refused to accommodate
the Plaintiffs' request for greater access to the Village water supply.  Defendants' refusal is
unreasonable, especially when considering the fact that the Northwood School construction
project approved by the Village Board has disrupted the Plaintiffs' access to the waterline that
previously supplied their property with water.

D. **FOIL Issue.**

88.     In 2017, Ms. Fletcher submitted a FOIL request for Village of Lake Placid

body cam footage regarding the October 2016 incident described above where Defendant James

Brooks demanded that Ms. Fletcher be arrested for protesting the placement of a dumpster on the

Fletcher Lot. (*See* ¶60, supra).  Subsequently, patrol officers arrived on site and advised

Ms. Fletcher of a potential arrest.  However, no officer body cam footage was ever provided.

89.     Therefore, in May 2017, Mr. Hughes submitted a FOIL request for Village

of Lake Placid procedure for officer use of their body worn cameras, as well as the storage of

body cam footage.  The purpose of Mr. Hughes's FOIL request was to understand the reason

why body cameras were not activated during the dumpster incident.

90.     On May 18, 2017, Ms. Bliss wrote an email to Plaintiffs' former attorney

stating that Mr. Hughes did not have the right to make such a FOIL request and that his request

was therefore denied.

91.     After more than a year of emails from Plaintiffs protesting the arbitrary

denial of Mr. Hughes's reasonable FOIL request, the Village of Lake Placid finally provided a

body camera manual dated a year after the dumpster incident, which indicates that the Village

was operating for at least a year without a standard operating procedure for officers' use of body-

worn cameras.  No documented storage or use guidelines apparently were in place at the time of

the October 2016 incident that required Village police officers to wear and use body cameras

while performing their officer duties.

92.     In 2018, Mr. Hughes entered the public area (hallway) of the Village of

Lake Placid Police Department to pay for and pick up a FOIL request.  While remaining in the

hallway, Mr. Hughes recorded the transaction on his cell phone.

93.     Village of Lake Placid Police Department Administrative Assistant Stacy
Tempestilli demanded that Mr. Hughes cease recording the transaction.  Mr. Hughes directed the
iPhone camera lens to the floor due to fear of arrest by the two officers who were present in the
room with Tempestilli.

94.     After the incident, Mr. Hughes mailed a complaint letter to Mayor Randall
explaining the situation and asking the Mayor to correct the poor behavior of Ms. Tempestilli.
Mr. Hughes received no response to this letter.

95.     On May 21, 2018, Mr. Hughes attended a Village of Lake Placid Board
meeting and raised the issue of the Village policies for filming of public officials from a public
space.  During that meeting Mayor Randall claimed that what is behind the police department
door was a private area of the police station.  Mr. Hughes countered that once the door was
opened, he could clearly see what was inside the room, and that he was allowed to film while
standing in the open public space.

96.     Mayor Randall was dismissive towards Mr. Hughes's complaints, and so
Mr. Hughes followed up with a letter requesting that a complaint be filed against
Ms. Tempestilli.  Mr. Hughes received no response to this letter.

### E.  The Special Village Board Meeting of April 3, 2019.

97.     On March 29, 2019, Mr. Broderick wrote a letter to Village of Lake Placid
Mayor Craig Randall and the Village Board of Trustee members requesting that the Board
approve Northwood School's logistics plan (the "Means and Methods Plan") for the renovation
of the Northwood on Main Campus located at 2495 Main Street, Lake Placid.

98.     On April 2, 2019, at 2:55 p.m., the Village Clerk, Anita Estling, gave notice for a Special Board Meeting on April 3, 2019 at 9 a.m. (the "Northwood Special Board Meeting").

99.     Despite being on the Village of Lake Placid's Open Public Meeting Agenda email list, and despite receiving notice of each Open Public Meetings prior via said email list, Mr. Hughes did not receive notice of the Northwood Special Board Meeting, and the Village did not provide said notice via the Village's email list.

100.     Further, the Northwood Special Board Meeting lacked the minimum 72-hour notice required by New York State Public Officers Law, Article 7 Open Meetings Law, § 104.1. There was no urgency, compelling interest, or public need required for such an abbreviated notice of only two business hours. The abbreviated notice was unreasonable and, thus, the conclusions, regulations, and continued approvals are all null and void.

101.     Without receiving notice of the meeting, the Plaintiffs did not attend the Northwood Special Board Meeting.

102.     As a result of The Northwood Special Board Meeting, the Village Board passed Resolution No. 97-2019, 'The Northwood on Main Street Construction' ("Resolution"). The Resolution allowed certain special use permissions to Northwood School that have since interfered with the Plaintiffs' property rights, including: (1) closure of the public walkway on Main Street that is adjacent to the Fletcher Lot and includes the Ms. Fletcher's only access point to the public walkway on Main Street; (2) low elevation flyover use over the Fletcher Lot; and (3) no requirement to comply with ADA requirements—a typical "boilerplate" condition of all NYS Department of Transportation permit approvals.

103.    Moreover, there was a clear conflict of interest for the Village of Lake
Placid Board Trustee members who voted on the Resolution. Of the three Trustees who voted on
the Resolution, two Trustees were Northwood School alumni—*i.e.* Peter Holderied and Mayor
Craig Randall. Mr. Holderied is the brother of Jennifer Holderieid Webb who Mr. Hughes
pressed charges against for trespassing on the Fletcher Lot. Mr. Holderied knew of his sister's
trespass and the subsequent criminal charges against her at the time of his vote approving the
Resolution.

104.    On April 4, 2019, Mr. Broderick and three employees for Bette & Cring—
Dick White, Patrick Gebbie, and "Ken"—entered the Northwood Lot and reviewed the common
property lines for the Northwood Lot and Fletcher Lot. Captured on surveillance were the three
Bette & Cring employees trespassing onto the Fletcher Lot.

105.    Additionally, at this time, on or around April 4, 2019, a broken window
fell off the Northwood School building onto the Fletcher Lot. The window frame, *only*, was
removed by Defendants Dick White and Patrick Gebbie, who left the broken glass on the
Fletcher Lot as a hazard to the Plaintiffs. Mr. Hughes, who is a trained Union Glazer, later safely
removed the broken glass hazard.

106.    On April 11, 2019, a construction barrier wall was installed along the
Northwood Lot and Fletcher Lot. This wall denied the Plaintiffs access to the walkway easement
that was retained by Plaintiffs in the Shehadi/Turner transfer. Plaintiffs were not notified of the
barrier to the easement prior to its construction.

107.    On April 12, 2019, Mr. Hughes contacted Bette & Cring Division
Manager, Dick White, via phone and told Mr. White that his barrier of the walkway easement
was not lawful. Mr. Hughes also told Mr. White about the April 4, 2019 trespass of the three

Bette & Cring employees.  Mr. Hughes followed up in a letter to Defendant White describing the

trespass and requesting that he take immediate action to correct and prevent future trespasses on

the Plaintiff's property.  Defendant White later presented this letter to Northwood School

officials with written comments that Mr. Hughes was attempting to lodge a "bogus trespass

claim" against his employees.  This letter, with Defendant White's written comments, was

presented to the court as an exhibit in separate litigation regarding the Northwood School

construction project.

108.    Later that day (April 12, 2019), Northwood School, through their attorney

and School Board member James Brooks, emailed Bette & Cring directing the general contractor

to proceed with construction of barriers precluding Plaintiffs' access to their walkway easement

on the Northwood Lot.  Mr. Hughes was cc'd on this email.

109.    On April 15, 2019, Mr. Hughes attended the next bi-monthly Regular

Village of Lake Placid Board Meeting to protest the Board's failure to notify the Plaintiffs, and

the general public for that matter, of the Northwood Special Board Meeting.  Mr. Hughes stated

that the Plaintiffs specifically should have been notified as the Northwood School construction

project was immediately adjacent to their property, required the closure of the public walkway

on Main Street that adjoins the entire western boundary of the Fletcher Lot, and that the planned

installation of barriers for the construction project would deny Ms. Fletcher's only pedestrian

access to the Main Street public walkway.  Mr. Hughes specifically notified the Village Board

again of

110.    During the April 15, 2019 Village Board Meeting, Mr. Hughes orally

presented the alternative means and methods plan that he discussed with Northwood School

representatives on May 22, 2017, which required no walkway closures, compliant overhead

pedestrian protection, and conforming ADA practices.

111.    Oddly, Mayor Randall claimed that he had no knowledge of an alternative

means and methods plan other than the Means and Methods Plan that was approved at the

Northwood Special Board Meeting.  Mayor Randall's assertion was false, as Mr. Hughes

e-mailed Mr. Randall on April 11, 2018 with an outline of his alternative means and methods

plan, which required no walkway closures, compliant overhead pedestrian protection, and

conforming ADA practices.

112.    Notably, present at the eleventh-hour Northwood Special Board Meeting

was Code Enforcement Officer, Michael Orticelle.  In addition, upon information and belief, the

Mayor and Mr. Orticelle had numerous prior meetings with Northwood School and Bette &

Cring regarding the proposed new construction and renovation project.  Those meetings were

documented, and a record of those meetings was attached as Exhibit 'A' to the Resolution.[3]

113.    Meeting Minutes documenting the Village Board meeting do not mention

Mr. Hughes speaking or the nature of his comments.[4]  Upon information and belief, Defendants

purposely conspired to remove Mr. Hughes's comments where he proposed a less intrusive

alternative means and methods plan for the Northwood School construction project.

_____

[3] Although Mayor Randall was not listed in the meetings documented in Exhibit 'A' to the
Resolution, he did state in a YouTube clip that he was in "weekly contact" with Northwood
School during their construction project.

[4] Indeed, it is common practice for the Village Board Meeting minutes to omit Mr. Hughes's
comments when he attends and speaks at Village Board meetings.  It also is the general practice
for the Village Board to be nonresponsive to Mr. Hughes's emails that contain legitimate
concerns and grievances.

114.    On April 21, 2019, Mr. Hughes hand-delivered to the Village Clerk a written summary of his alternative means and methods plan that was orally proposed at the April 15, 2019 Village Board Meeting.  Thus, Defendants have no excuse for their failure to consider the alternative means and methods plan proposed by Plaintiffs, which required no walkway closures, compliant overhead pedestrian protection, and conforming ADA practices.[5]

115.    Since the passing of the Resolution, these special uses have substantially interfered with the Plaintiffs' property rights, including Ms. Fletcher's ability to access the Main Street public walkway from the Fletcher lot.  Indeed, the Defendants have consistently and repeatedly created barriers that prevent the Plaintiffs' access to the Main Street public walkway space, including dangerous cranes and other heavy machinery that completely block the Plaintiffs' access.

### F.  Defendants' Uncontained Construction Activities Immediately Adjacent to the Plaintiffs' Land Unlawfully Intruded on the Plaintiffs' Property Rights.

116.    Defendants' construction activities substantially interfered with the Plaintiffs' private enjoyment of their property and distributed potentially harmful construction debris and waste ("Debris") onto the Plaintiffs' property.  Moreover, the contractors and subcontractors have created numerous barriers to the Plaintiffs' free access to the Main Street public walkway during the uncontained and intrusive new construction and renovation project at the Northwood School Main Street Campus.

---

[5] Additionally, as licensed general contractors, both Bette & Cring and O'Neal Contracting have, or should have, actual knowledge of ADA requirements, which are contained in the NYS Building Code, Chapter 11 Accessibility, Section 1103.1.

117.    For example, on April 16, 2019, Bette & Cring and O'Neil Contracting

closed the public walkway for no apparent reason or need and placed barriers on the public

walkway that prevented the Plaintiffs' pedestrian access to the Main Street public walkway from

the Fletcher Lot.  Those barriers included a dumpster that was placed on the Main Street public

walkway.

118.    On April 16, 2019, Mr. Hughes sent an email to Bette & Cring Division

Manager, Dick White, reinforcing                                    and need for barrier free

access to the Main Street public walkway from the Fletcher Lot.  Plaintiffs never received a

response to this email.

119.    On April 16, 2019, Village of Lake Placid Mayor Craig Randall was

observed on the public walkway near the barriers to Plaintiffs' pedestrian access from the

Fletcher Lot to Main Street.  Mayor Randall was speaking with Mr. Broderick and Bette & Cring

Project Superintendent, John Doe a/k/a "Ken."  Thus, Mayor Randall had actual and/or

constructive knowledge of the intrusion on Plaintiffs' property rights as well as the ongoing

ADA violations.

120.    On May 6, 2019, Bette & Cring started to use the Main Street public

walkway to park heavy concrete and dumpster trucks which created ADA barriers to

Ms. Fletcher's access to the Main Street public walkway that did not exist prior to the

construction.  Indeed, these construction trucks and heavy equipment permanently damaged the

public walkway adjacent to the Fletcher Lot and created permanent barriers on the walkway at

Ms. Fletcher's exit point.  These barriers continue to accumulate large amounts of ponding water

that do not drain.  Simply put, the Village never should have allowed trucks and equipment to

travel over a brick paver walkway.

29

Case 8:22-cv-00314-LEK-DJS   Document 1   Filed 04/01/22   Page 30 of 55

121.    On May 10, 2019, Burke Excavation employees parked a large construction vehicle on the public walkway adjacent to the Fletcher Lot.

122.    Additionally, on May 19-20, 2019, a hazardous materials containment vessel on the Northwood Lot lost its covering during a heavy rainstorm. Defendants, including abatement contractor Burke Excavation, failed to responsibly contain the hazardous materials, and on May 21, 2019 large amounts of hazardous materials flew from the Northwood Lot to the Fletcher Lot. The windspeed that day was 24 mph, well below anticipated failure speeds. At no time prior to the incident were Plaintiffs notified of the exterior hazardous materials that were being abated right next to their property.

123.    On May 22, 2019, Mr. Hughes woke up with extreme irritation in his eyes, and he was forced to cancel a business trip to Ontario and seek medical attention at Adirondack Medical Center where he was treated for the irritation to his eyes.

124.    More hazardous materials were found on the Fletcher lot from May 22-25, 2019.

125.    On May 21, 2019, the Plaintiffs left their home with the intention of walking to the Main Street Business District. Mr. Hughes walked up the stairs to the access point for the Plaintiffs to enter the Main Street public walkway and was forced to remove a barrier that obstructed his access to the public walkway from the Fletcher lot. Ms. Fletcher was unable to reach Main Street from the access point due to her p_____, and she was forced to leave by vehicle. O'Neil Contracting employees are seen on video moving the barrier back to its previous position which obstructs the Plaintiffs' access to Main Street from the Fletcher lot.

126.     On July 8, 2019, employees and agents for Jack's Custom Painting, including, upon information and belief, Sherri Rugar, started to consistently park a motorized aerial boom lift in front of the gate that provides the Plaintiffs access from the Fletcher Lot to the public walkway on Main Street.  Upon information and belief, this was done on purpose Jack's Custom Painting employees would turn the aerial boom lift's tires towards the gate for the access point making it impossible to open the gate door.  The painters would park the vehicle in this way, day and night 24/7, even if they were not working at the Northwood School property on any given day.  The painters also, for no legitimate reason, would remove the Village's Loading Zone Sign, and place it over a fence onto a flower planter on the Fletcher Lot, as well as place the sign in front of the gate door, which created further barriers for Ms. Fletcher.

127.     On July 17, 2019, a Bette & Cring representative is seen on surveillance intentionally and deliberately picking up a steel barrier and placing it against the gate to the access point for the Plaintiffs from the Fletcher Lot to the Main Street public walkway.  By placing the steel barrier against the gate door, the access point was inoperable for the Plaintiffs.

128.     On July 20, 2019, Mr. Hughes walked up the stairs and asked the painting contractor to move her lift so that the Plaintiffs could access the Main Street public walkway.  Upon information and belief, the painting contractor was Sherri Rugar.  Mr. Hughes explained                             and that the stairs were her only pedestrian access to the Main Street public walkway.  However, the painting contractor refused to move the lift, and told Mr. Hughes that a Bette & Cring representative told her to leave the boom lift in the location on the public walkway immediately in front of the stairs and gate that leads from the Fletcher Lot to the Main Street public walkway.  The painting contractor also told Mr. Hughes "I will call the EPA" and stated threateningly "I got your number."

129.    After the exchange, the painting contractor placed a steel barrier between the gate and boom lift to further create barriers from the Fletcher Lot to the Main Street public walkway.

130.    From July 8-24, 2019 and again from August 27-Spetenmber 19, 2022, the painting contractor parked her aerial boom lift overnight in a way that obstructed Ms. Fletcher's use of the gate that leads from the Fletcher Lot to the Main Street public walkway.

131.    On August 19, 2019, Plaintiffs noticed that the temporary construction wall obstructing their access to their easement on the Northwood Lot was structurally unsound and falling onto the Fletcher Lot.  Immediately thereafter, Plaintiffs notified Bette & Cring Project Superintendent, John Doe a/k/a "Ken," and an O'Neil Contracting representative of the need to remedy the construction wall.  Despite being notified of the need to remedy the structural integrity of the temporary construction wall, the wall was never fixed properly, and on December 8, 2019, the construction wall collapsed and fell onto a building owned by the Plaintiffs which was situated on the Fletcher Lot.

132.    On September 3, 2019, Plaintiffs observed old paint debris landing on the Fletcher Lot.  Mr. Hughes asked the Bette & Cring Project Superintendent, John Doe a/k/a "Ken," if the paint found on the Fletcher Lot was "lead based paint."  "Ken" refused to answer or address Mr. Hughes's reasonable safety concern.  However, in a later update video regarding the Northwood School construction project, Defendant Broderick discussed lead paint abatement that took place during the project.  Plaintiffs, therefore, reasonably believe that the paint chips found by Mr. Hughes on the Fletcher Lot were lead based paint.

133.    On December 8, 2019, O'Neil Contracting employees cut cement boards right next to Mr. Hughes's vehicle causing the vehicle to become covered in cement dust.

134.    Throughout the new construction and renovation project for Northwood School, the contractors and subcontractors have created numerous non-compliant ADA barriers on the public walkway that have prevented physically disabled individuals from using the Main Street public walkway.

135.    In addition to creating barriers to the Plaintiffs' access to the Main Street public walkway, the contractors and subcontractors working on the Northwood School construction project have continually used cranes and boom lifts to hoist materials, construction workers, and equipment—including excavators—over the Fletcher lot despite having written and verbal notice from the Plaintiffs that they object to such aerial intrusions of their property rights. These aerial flyovers would be less than fifteen feet above the structures on the Fletcher Lot, thus were an invasion of the Plaintiffs' property rights and a taking of private property in violation of the Fifth Amendment.

136.    Bette & Cring representatives were verbally ordered by the Plaintiffs not to flyover the Fletcher Lot, to which the Bette & Cring representative, upon information and belief, Project Superintendent "Ken," responded "You don't own the air.  I will flyover anytime that I want."

137.    In addition to creating barriers and denying the Plaintiffs their free use and enjoyment of their property, the Defendants have been collectively and generally rude and inconsiderate towards the Plaintiffs.  For example, On May 8, 2019, Bette & Cring's workforce started to use the public walkway as their smoking area and used the flowerpots that were on the Fletcher Lot as ashtrays.

138.    In addition, on June 10, 2019, Mr. Hughes was working outside on the Fletcher Lot, and an employee from O'Neil Contracting purposely dropped materials near where

Mr. Hughes was working. Rather than admit to the mistake and apologize, a Bette & Cring representative argued with Mr. Hughes that nothing fell. The entire incident was captured on video and shows that materials intentionally were dropped near Mr. Hughes.

139.    Plaintiffs also have numerous videos showing Bette & Cring and O'Neil contracting employees purposely placing barriers in front of the Plaintiffs' access point to the Main Street public walkway from the Fletcher Lot at night when there is no construction work going on. Upon information and belief, Bette & Cring and O'Neil Contracting employees did this with the intent of restricting the Plaintiffs' access and free enjoyment of their property. Upon information and belief, these actions by the contractors were directed by, inter alia, Defendants Broderick and Brooks.

140.    In addition to intentionally placing barriers restricting Plaintiffs' access and free enjoyment of their property, Defendants would either negligently, recklessly, or with deliberate indifference place dumpsters and heavy machinery on the public walkway adjacent to the Fletcher Lot which are nonconforming ADA barriers.

141.    Most egregiously, representatives for Bette & Cring, specifically, John Doe a/k/a "Ken" (last name currently unknown), made numerous rude and inconsiderate comments to the Plaintiffs regarding Ms. Fletcher

142.    "Ken" would also allow his dog to freely roam on the Fletcher Lot despite multiple warnings from Mr. Hughes to cease such conduct. On January 15, 2020, the dog entered the Fletcher Lot and relieved itself on Plaintiffs' property. The dog then circled Ms. Fletcher causing her to become fearful. Ms. Fletcher was using a cane at the time to aid in her mobility, and she was very ill at the time. The dog owned by "Ken" caused Ms. Fletcher to

be placed under serious duress, and she was admitted to the hospital for over a week the day after, on January 16, 2020.

143.    On multiple occasions throughout the Northwood School construction project, Defendants, their employees, agents, supervisors, and other associated personnel unlawfully entered and remained on the Fletcher Lot despite being advised on multiple occasions not to enter the Fletcher Lot without prior permission.  Upon information and belief, these unlawful entries were made pursuant to Defendants' policy and custom to violate Plaintiffs' property rights and retaliate against Plaintiffs for attempting to protect their property rights.

144.    For example, Defendant Tom Broderick was notified multiple times in writing not to enter the Fletcher Lot.  Nevertheless, after receiving written direction not to enter the Plaintiff's property, in July 2020, Defendant Broderick entered the Fletcher Lot, approached the Plaintiff's home, knocked on the front door, and asked to speak with Mr. Hughes.  Defendant Broderick had Mr. Hughes's e-mail for any communication, therefore rendering his trespass unnecessary.

145.    Additionally, in April 2021, Mr. Hughes told Defendant Art Devlin not to put planters and plants on a fence that runs parallel to the public walkway on Main Street. Mr. Hughes explained to Defendant Devlin that the fence was actually on the Fletcher Lot, and also that previous planters and plants on the fence were vandalized.  Despite Mr. Hughes's request that Defendant Devlin not place planters on a fence located on the Plaintiffs' property, Defendant Devlin decided to bring the installation of plants to the Village Board for a vote. When discussing the proposal, Defendant Devlin named Mr. Hughes specifically and was derogatory towards Mr. Hughes.  Defendant Jason Leon, a Village Board Trustee, then made a disturbing statement that if Mr. Hughes was against it, then he, Defendant Leon, was okay with

voting for it.[6] Ultimately, after these disturbing comments were made, the Village Board

decided to approve Defendant Devlin's proposal to put plants and planters on the Plaintiffs'

fence.

146.    As a direct and proximate result of Defendants' conduct, Plaintiffs have

been compelled to retain the services of counsel to protect and enforce their rights, and therefore,

Plaintiffs have incurred and continue to incur attorneys' fees, expert fees, and costs for which

they are entitled to reimbursement in an amount to be established at the time of trial pursuant to

42 U.S.C. § 1988.


## CAUSES OF ACTION

### FIRST CAUSE OF ACTION

**Violation of the Fourteenth Amendment**
**Procedural Due Process Violation under 42 U.S.C. § 1983**
**Against Defendants Craig Randall, Art Devlin, Peter Holderied,**
**Jason Leon, Anita Estling, and Janet Bliss**

147.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1

through 146 of this complaint as if fully set forth here.

148.    Under the Fourteenth Amendment to the United States Constitution, no

government official shall "deprive any person of life, liberty, or property, without due process of

law."

---

[6] A copy of the Village Board meeting, where Defendants Devlin and Leon made disturbing and
derogatory statements towards Mr. Hughes, can be found at the following web address:
https://www.youtube.com/watch?v=xf21-D90Jt0&t=5699s.  From 1:34:30 to 1:36:00, Defendant
Devlin asks if the Village Board is okay with the Village installing plants on the Plaintiff's fence.
Defendant Leon responds, "Is Jim okay with it?"  After hearing laughs from the crowd,
indicating that the answer was no, Mr. Leon responded "that makes me a little more okay with
it," referring to his vote in favor of the plants and planters.

36

149.    In addition to protecting certain unenumerated rights, the Due Process Clause of the Fourteenth Amendment also has a procedural aspect which guarantees an individual's right to fair procedures before depriving a person of "life, liberty, or property."

150.    Plaintiffs had a property right in the Fletcher Lot.

151.    Defendants voted and approved the Resolution which they knew, or should have known, would seriously impede Plaintiffs' property rights, on an "emergency" basis, when no such emergency existed, and without providing the Plaintiffs with notice and without providing the Plaintiffs with an opportunity or forum in which to protest the means and methods proposed by Northwood School for its renovation and construction project.

152.    Upon information and belief, Ms. Bliss, the Village Attorney, improperly advised the Village Board that their actions were lawful and that voting on the Resolution with such an abbreviated notice did not violate Plaintiffs' due process rights.

153.    In committing these acts, the defendants failed to provide reasonable notice of any kind to the Plaintiffs that the above-referenced Resolution would be considered and, thus, they prevented the Plaintiffs from attempting in any way to oppose or to prevent the passing of the Resolution that has caused the numerous violations of Plaintiffs' property rights described herein.

154.    The defendants improperly declared an emergency where no circumstances justifying emergency measures existed, they provided no notice to Plaintiffs, and they consciously disregarded the rules and procedures of the Village of Lake Placid, the State of New York, and the Constitution of the United States, thereby intentionally depriving the Plaintiffs of an opportunity to be heard in violation of their due process rights.

155.   Approval of Northwood School's proposed means and methods was not a sufficient or lawful purpose requiring an immediate emergency Village Board Meeting to approve the Resolution.

156.   Since there was no emergency with respect to the approval of Northwood School's proposed means and methods, the Plaintiffs and public were entitled to an opportunity to be heard in an open forum, before the voting on and passing of the Resolution by the Village Board of Trustees, as required under the Due Process Clause of the Fourteenth Amendment.

157.   As a result of their actions and inactions, defendants deprived Plaintiffs of their procedural due process rights.

158.   Defendants' conduct was committed under the color of state law.

159.   As a direct and proximate result of the foregoing, Plaintiffs were damaged and injured in an amount to be determined at trial.

160.   The conduct by Defendants was willful, malicious, oppressive, and reckless, and was of such a nature that Plaintiffs claim punitive damages against each of them in an amount commensurate with the wrongful acts alleged.


## SECOND CAUSE OF ACTION

### Violation of the Fourteenth Amendment
### Substantive Due Process Violation under 42 U.S.C. § 1983
### Against All Defendants

161.   Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 160 of this complaint as if fully set forth here.

162.   Under the Fourteenth Amendment to the United States Constitution, no state shall "deprive any person of life, liberty, or property, without due process of law."

163.     In addition to guaranteeing certain procedural protections, the Due Process

Clause of the Fourteenth Amendment guarantees certain substantive protections, including the

right to property.

164.     Defendants acted arbitrarily, oppressively, and in a conscience-shocking

manner in authorizing, encouraging, and condoning the multiple takings of Plaintiffs' property

rights and their free enjoyment of the Fletcher Lot.

165.     The defendants improperly declared an emergency where no

circumstances justifying emergency measures existed, provided no notice to the Plaintiffs, and

consciously disregarded the rules and procedures in place to protect the due process rights of the

Plaintiffs, thereby intentionally depriving the Plaintiffs of their property rights without an

opportunity to be heard.

166.     Plaintiffs' substantive due process rights under the Fourteenth Amendment

of the Constitution of the United States were violated, as Plaintiffs have suffered a loss of

property rights due to the illegal acts of the defendants.

167.     As a result of the foregoing, the Plaintiffs have been deprived of realty,

rental income, business income, good will, and reputation.

168.     Defendants' deprivation of the Plaintiffs' property rights was an arbitrary

and capricious violation of Plaintiffs' due process rights.

169.     Defendants were deliberately indifferent to the possibility that their

actions and omissions would lead to a deprivation of Constitutionally-protected rights.

170.     Defendants' conduct involved reckless or deliberate and callous

indifference to Plaintiffs' property rights.

171.    Defendants intentionally or recklessly failed to provide Plaintiffs with an opportunity to be heard before deliberating, considering, and ultimately passing the Resolution that since has caused the invasion upon and taking of Plaintiffs' property rights as described above.

172.    Defendants' actions deprived Plaintiffs of their substantive due process rights guaranteed by the Fourteenth Amendment.

173.    Defendants' conduct was committed under the color of state law.

174.    Although private entities and individuals, Northwood School, Lake Placid, New York, Michael Maher, Thomas Broderick, James Brooks, Bette & Cring Construction Group, LLC, Matthew Bette, Dick White, Patrick Gebbie, John Doe, who is presently known as a male named "Ken," O'Neil Contracting, Bloomingdale, New York, John O'Neil, Burke Excavation Demolition, Inc., ABN: Jeda Environmental, Massena, New York, Shawn Burke, Jodi Burke, Jack Rugar Custom Painting, Keeseville, New York, Jack Rugar, and Sherri Rugar acted in concert with the Village of Lake Placid defendants to violate Plaintiffs' rights and in furtherance of causing damages to the Plaintiffs, and therefore, are liable under 42 U.S.C. § 1983. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970).

175.    As a direct and proximate result of the foregoing, Plaintiffs were damaged and injured in an amount to be determined at trial.

176.    The conduct by Defendants was willful, malicious, oppressive, and reckless, and was of such a nature that Plaintiffs claim punitive damages against each of them in an amount commensurate with the wrongful acts alleged.

## THIRD CAUSE OF ACTION

**Violation of the Fifth and Fourteenth Amendments**
**Unlawful Taking under 42 U.S.C. § 1983**
**<u>Against All Defendants</u>**

177.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 176 of this complaint as if fully set forth here.

178.    The multiple takings of the Plaintiffs' property rights described above constituted a deprivation of Plaintiffs' property rights in violation of their Constitutionally-protected rights under the Fifth and Fourteenth Amendments to the United States Constitution.

179.    Plaintiffs were deprived of their property without due process of law in that they were not given notice and an opportunity to be heard before being deprived of it.

180.    Providing notice and an opportunity to be heard was not impractical for the Defendants, nor was the situation underlying the passing of the Resolution and approval of Northwood School's proposed means and methods an emergency.

181.    Since there was no emergency with respect to the passing of the Resolution and approval of Northwood School's proposed means and methods, the Plaintiffs were entitled to a pre-deprivation hearing before the Resolution was considered and ultimately approved.

182.    Defendants prevented the Plaintiffs from receiving a pre-deprivation opportunity to be heard with respect to the passing of the Resolution and approval of Northwood School's proposed means and methods by failing to provide notice to them.

183.    Plaintiffs' property was taken without just compensation.

184.    Although private entities and individuals, Northwood School, Lake Placid, New York, Michael Maher, Thomas Broderick, James Brooks, Bette & Cring Construction

41

Case 8:22-cv-00314-LEK-DJS   Document 1   Filed 04/01/22   Page 42 of 55

Group, LLC, Matthew Bette, Dick White, Patrick Gebbie, John Doe, who is presently known as a male named "Ken," O'Neil Contracting, Bloomingdale, New York, John O'Neil, Burke Excavation Demolition, Inc., ABN: Jeda Environmental, Massena, New York, Shawn Burke, Jodi Burke, Jack Rugar Custom Painting, Keeseville, New York, Jack Rugar, and Sherri Rugar acted in concert with the Village of Lake Placid defendants to violate Plaintiffs' rights and in furtherance of causing damages to the Plaintiffs, and therefore, are liable under 42 U.S.C. § 1983. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970).

185.    As a direct and proximate result of the foregoing, Plaintiffs were damaged and injured in an amount to be determined at trial.

186.    The conduct by Defendants was willful, malicious, oppressive, and reckless, and was of such a nature that Plaintiffs claim punitive damages against each of them in an amount commensurate with the wrongful acts alleged.


### FOURTH CAUSE OF ACTION

**Violation of the Fourteenth Amendment**
**Violation of the Equal Protection Clause under 42 U.S.C. § 1983**
**Against Defendants Craig Randall, Art Devlin, Peter Holderied, Jason Leon,**
**Anita Estling, Brad Hathaway, and Janet Bliss**

187.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 186 of this complaint as if fully set forth here.

188.    The Fourteenth Amendment to the United States Constitution provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws."

189.    The allegations described above demonstrate that Plaintiffs appear to have been singled out and treated very differently from other property owners in the Village of Lake Placid.

42

190.    The defendants violated Plaintiffs' well-established rights under the Equal Protection Clause of the Fourteenth Amendment in that they deprived and/or seriously intruded on Plaintiffs' property rights, without due process of law, as well as denying them equal protection of the law in failing to remediate the safety concerns identified by the Plaintiffs regarding their use of their property rights while remaining attentive to special requests and variances requested by those Village of Lake Placid residents and entities who are regarded with favor by the Village leadership, including the Board of Trustees and Village elected leaders.

191.    Upon information and belief, Defendants conspired to pass the Resolution without providing Plaintiffs notice because of Defendants Randall, Devlin, Holderied, Leon, Estling, Hathaway, and Bliss's personal animus toward the Plaintiffs.

192.    Defendants Randall, Devlin, Holderied, Leon, Estling, Hathaway, and Bliss assisted in the initiation and orchestration of the "emergency" Village Board meeting that led to the passage of the Resolution.

193.    Defendants Randall, Devlin, Holderied, Leon, Estling, Hathaway, and Bliss selectively enforced the Village of Lake Placid's emergency Village Board meeting provisions due to their personal animus towards the Plaintiffs.

194.    Upon information and belief, Defendants Randall, Devlin, Holderied, Leon, Estling, Hathaway, and Bliss improperly had direct operational, hands-on control over the timing and notice given for the April 3, 2019 special Village Board meeting that led to the passage of the Resolution.

195.    Through these actions, as well as the acquiescence of the other Defendants named herein, Defendants collectively deprived the Plaintiffs of the rights secured to them by the Fourteenth Amendment to the Constitution of the United States.

196.    As a direct and proximate result of the foregoing, Plaintiffs were damaged and injured in an amount to be determined at trial.

197.    The conduct by Defendants was willful, malicious, oppressive, and reckless, and it was of such a nature that Plaintiffs claim punitive damages against each of them in an amount commensurate with the wrongful acts alleged.


## FIFTH CAUSE OF ACTION

**Violation of the Fourth, Fifth, and Fourteenth Amendments
Abuse of Process under 42 U.S.C. § 1983
Against Defendants Craig Randall, Art Devlin, Peter Holderied, Jason Leon, Janet Bliss,
Anita Estling, Northwood School, Michael Maher, James Brooks, Thomas Broderick,
Bette & Cring, Matthew Bette, and Dick White**

198.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 197 of this complaint as if fully set forth here.

199.    The defendants committed an abuse of process by attempting to utilize the emergency Village Board meeting process to accomplish an improper purpose – *i.e.* passage of the Resolution in a way that avoids public scrutiny and discourse.

200.    The improper purposes included, inter alia, to cause financial harm to the Plaintiffs due to the defendants' personal animus towards the Plaintiffs; to increase the value and profitability of property owned by favorable property owners in the Village of Lake Placid, including Northwood School; to harm the Plaintiffs' reputation; to deprive the Plaintiffs of their property rights without affording the Plaintiffs an opportunity to be heard; and to violate the Plaintiffs' rights secured to them by the Constitution of the United States.

201.    In accomplishing these improper purposes, Defendants fraudulently conveyed that they had deprived the Plaintiffs of their Constitutionally-protected rights by lawful process.

202.    In this regard, Defendants employed legal process in an improper manner and with ulterior motives.

203.    Defendants deprived the Plaintiffs of the rights secured to them by the Constitution of the United States.

204.    Although private entities and individuals, Northwood School, Lake Placid, New York, Michael Maher, Thomas Broderick, James Brooks, Bette & Cring Construction Group, LLC, Matthew Bette, and Dick White acted in concert with the Village of Lake Placid defendants to violate Plaintiffs' rights and in furtherance of causing damages to the Plaintiffs, and therefore, are liable under 42 U.S.C. § 1983. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970).

205.    As a direct and proximate result of the foregoing, Plaintiffs were damaged and injured in an amount to be determined at trial.

206.    The conduct by Defendants was willful, malicious, oppressive, and reckless, and it was of such a nature that Plaintiffs claim punitive damages against each of them in an amount commensurate with the wrongful acts alleged.

## SIXTH CAUSE OF ACTION

**Violation of the Fourth, Fifth, and Fourteenth Amendments
Conspiracy to Violate Plaintiffs' Constitutional Rights under 42 U.S.C. § 1983
Against Defendants Craig Randall, Art Devlin, Peter Holderied, Jason Leon, Janet Bliss,
Anita Estling, Northwood School, Michael Maher, Thomas Broderick, James Brooks,
Bette & Cring, Matthew Bette, and Dick White**

207.     Plaintiffs repeat and reallege the allegations contained in paragraphs 1

through 206 of this complaint as if fully set forth here.

208.     Employees for the Village of Lake Placid, while acting under the color of

state law, conspired with employees of Northwood School and Bette & Cring to deprive the

Plaintiffs of their rights guaranteed under the Fourth, Fifth, and Fourteenth Amendments.

209.     The deprivation of Plaintiffs' constitutionally protected rights was carried

out by all defendants collectively as co-conspirators.

210.     Defendants Northwood School, Michael Maher, Thomas Broderick, James

Brooks, Bette & Cring Construction Group, LLC, Matthew Bette, and Dick White entered into

an agreement with the Village of Lake Placid defendants and acted in concert with them to inflict

unconstitutional injury.

211.     Defendant Northwood School, Michael Maher, Thomas Broderick, Bette

& Cring Construction Group, LLC, Matthew Bette, and Dick White had an agreement with the

other defendants to intrude on Plaintiffs' property rights without their knowledge and approval

and knew, or should have known, that an objection to the Resolution and approval of the means

and methods proposed by Northwood School had been or would be lodged.

212.     Defendants acted as expeditiously as possible to pass the Resolution and

approve Northwood School's proposed means and methods so as to avoid a legal challenge by

the Plaintiffs.

213.    Defendants are liable under 42 U.S.C. § 1983 for conspiring to deprive the Plaintiffs of their constitutionally protected rights.

214.    Although private entities and individuals, Northwood School, Michael Maher, Thomas Broderick, Bette & Cring Construction Group, LLC, Matthew Bette, and Dick White acted in concert with the Village of Lake Placid defendants to violate Plaintiffs' rights and in furtherance of causing damages to the Plaintiffs, and therefore, are liable under 42 U.S.C. § 1983. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970).

215.    As a direct and proximate result of the foregoing, Plaintiffs were damaged and injured in an amount to be determined at trial.

216.    The conduct by Defendants was willful, malicious, oppressive, and reckless, and it was of such a nature that Plaintiffs claim punitive damages against each of them in an amount commensurate with the wrongful acts alleged here.

## SEVENTH CAUSE OF ACTION

### Violation of Title II of the Americans With Disabilities Act
### Against All Defendants

217.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 216 of this complaint as if fully set forth here.

218.    Title II of the ADA prohibits a public entity from excluding a person with a disability from participating in, or denying the benefits of, the goods, services, programs, and activities of the entity, or otherwise discriminating against a person on the basis of disability. 42 U.S.C. § 12131.

219.    The Village of Lake Placid is a public entity as defined by the ADA at 42 U.S.C. § 12131 because it was engaged in local government.

47

220.   The Village of Lake Placid has responsibility or authority over the streets, roads, and walkways in the public right-of-way within the Village limits of the Village of Lake Placid and is charged with the duty and authority of maintaining the public streets and sidewalks within the Village of Lake Placid for utilization by the public.

221.   Defendants Craig Randall, Art Devlin, Peter Holderied, Janet Bliss, Jason Leon, Anita Estling, Brad Hathaway, Northwood School, Lake Placid, New York, Michael Maher, Thomas Broderick, James Brooks, Bette & Cring Construction Group, LLC, Matthew Bette, Dick White, Patrick Gebbie, John Doe, who is presently known as a male named "Ken," O'Neil Contracting, Bloomingdale, New York, John O'Neil, Burke Excavation Demolition, Inc., ABN: Jeda Environmental, Massena, New York, Shawn Burke, Jodi Burke, Jack Rugar Custom Painting, Keeseville, New York, Jack Rugar, and Sherri Rugar are considered a public entity as defined by the ADA because they acted with the Village of Lake Placid in placing barriers to Ms. Fletcher's access to Main Street from the Fletcher Lot and as an instrumentality of the local government.

222.   Ms. Fletcher                                                      is a qualified individual as defined by the ADA.

223.   Title II of the ADA prohibits discrimination on the basis of disability by public accommodations.  It requires places of public accommodation and commercial facilities to remove barriers affecting accessibility to a place of accommodation from public sidewalks, parking, or public transportation where such removal is readily achievable.  42 U.S.C. § 12181, *et seq.*

224.   Here, as alleged above, Defendants, jointly and in concert, failed to remove equipment and other barriers for ADA-qualified individuals to access and use public

48

walkways, thereby denying Ms. Fletcher and other members of the public the full and equal

participation and enjoyment of public walkways near the Northwood School construction site.

225.    Removal of the equipment and other barriers was readily available without

much difficulty and expense.

226.    Nevertheless, upon information and belief, Defendants refused and/or

ignored Plaintiffs' reasonable requests to remove such barriers to Ms. Fletcher's free access and

use of the public walkway adjacent to the Fletcher Lot.

227.    As a direct and proximate result of the foregoing, Plaintiffs were damaged

and injured in an amount to be determined at trial.

228.    The conduct by Defendants was willful, malicious, oppressive, and

reckless, and it was of such a nature that Plaintiffs claim punitive damages against each of them

in an amount commensurate with the wrongful acts alleged here.


### EIGHTH CAUSE OF ACTION

**Violation of the Fourteenth Amendment
Policy, Custom, and Practice of Defendants and
Failure to Supervise and Train under 42 U.S.C. § 1983
<u>Against the Village of Lake Placid</u>**

229.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1

through 228 of this complaint as if fully set forth here.

230.    Defendant the Village of Lake Placid developed and maintained policies,

customs, and practices exhibiting deliberate indifference to the Plaintiffs' property rights.

231.    At all relevant times, defendant Village of Lake Placid was aware that

defendants Craig Randall, Art Devlin, Peter Holderied, Janet Bliss, Jason Leon, Anita Estling,

and Brad Hathaway were inadequately trained regarding to citizens' property and procedural due

process rights under the Fifth and Fourteenth Amendments, yet defendant Village of Lake Placid maintained a policy or custom of failing to provide defendants Craig Randall, Art Devlin, Peter Holderied, and Janet Bliss training on the Fifth and Fourteenth Amendments or adequate supervision over them.

232.    It was the policy or custom, or both, of defendant Village of Lake Placid to inadequately supervise and train its employees and agents, including defendants Craig Randall, Art Devlin, Peter Holderied, Janet Bliss, Jason Leon, Anita Estling, and Brad Hathaway, so it thereby failed to prevent the constitutional violations against Plaintiffs.

233.    Upon information and belief, defendant Village of Lake Placid maintained a policy, custom, or practice of interfering with Plaintiffs' property rights and disregarding Plaintiffs' legitimate safety concerns caused by Defendants' uncontained and unrestricted construction activities at the Northwood School Main Campus.

234.    Upon information and belief, defendant Village of Lake Placid maintained a policy, custom, or practice of interfering with Plaintiffs' property rights with reckless disregard to the due process rights of Plaintiffs because the Village knew that Plaintiffs would challenge their unlawful construction project.

235.    Defendants failed to properly screen and supervise the contractors and subcontractors who worked for the Northwood School Main Street Campus Renovation, despite their duty to screen and supervise the contractors and subcontractors proposed in Northwood School's proposed means and methods.  The Village of Lake Placid retained or allowed these contractors and subcontractors to be retained by Northwood School despite their history of inappropriate and unlawful acts that were documented by Plaintiffs and shared with the appropriate policymakers for the Village of Lake Placid.

236.   Upon information and belief, Village of Lake Placid policymakers, including, but not limited to, Mayor Craig Randall and Deputy Mayor Art Devlin, condoned and encouraged the inappropriate behavior by contractors and subcontractors herein in an effort to retaliate against Plaintiffs for voicing their legitimate concerns.

237.   Defendant Village of Lake Placid's policies, customs, and practices demonstrate a deliberate indifference to the constitutional rights of persons within the Village of Lake Placid, including Plaintiffs, and it therefore caused the violation of Plaintiffs' rights.

238.   Defendant Village of Lake Placid ratified and acquiesced in the unlawful conduct of the other defendants, as is evidenced by the Village of Lake Placid's failure to discipline and/or correct the bad behavior of the other defendants.

239.   As a direct and proximate result of the foregoing, Plaintiffs were damaged and injured in an amount to be determined at trial.

240.   The conduct by defendants was willful, malicious, oppressive, and reckless, and it was of such a nature that the Plaintiffs claim punitive damages against each of them in an amount commensurate with the wrongful acts alleged here.

**NINTH CAUSE OF ACTION**

**Trespass**
**Against All Defendants**

241.   Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 240 of this complaint as if fully set forth here.

242.   Plaintiffs own the Fletcher Lot and home located at

243.    Defendants intentionally gathered Debris on the Northwood Lot which is property immediately adjacent to the Plaintiffs' land, including their primary residence.

244.    The massive pile of Debris was uncovered and uncontained.

245.    Wind and rain carried Debris onto the Plaintiffs' land.

246.    By collecting and depositing massive piles of Debris immediately next to the Plaintiffs' land, Defendants have caused and allowed the Debris to enter the Plaintiffs' land.

247.    Defendants did not have permission from the Plaintiffs, express or implied, to cause, allow, or perpetuate the intrusion of Debris onto the Plaintiffs' land.

248.    The intrusion of Debris onto the Plaintiffs' land was a tangible, physical invasion of the Plaintiffs' right to exclusive possession of their land.

249.    This intrusion has caused, and continues to cause, damages to the Plaintiffs, including loss of enjoyment of life, emotional distress, depreciation in property value, and additional costs and expenses.

250.    This intrusion has caused, and may continue to cause, physical harm to the Plaintiffs and their guests, as the Debris may contain harmful, hazardous materials that have now intruded on the Plaintiffs' land and their living area.

251.    In addition to the trespass of materials and debris onto the Plaintiffs' property, there also were numerous trespasses by persons onto the Plaintiffs' land, as described above.

252.    Prior to these trespasses, the Plaintiffs clearly warned the Defendants not to trespass onto their land, and provided alternative means to contact the Plaintiffs, such as email or phone calls.

253.     Despite these warnings, the Defendants repeatedly and unnecessarily trespassed onto the Plaintiffs' property.

254.     These instructions have caused, and continue to cause, damages to the Plaintiffs, including loss of enjoyment of life, emotional distress, depreciation in property value, and additional costs and expenses.

255.     As a direct and proximate result of the foregoing, Plaintiffs were damaged and injured in an amount to be determined at trial.

256.     The conduct by Defendants was willful, malicious, oppressive, and reckless, and it was of such a nature that Plaintiffs claim punitive damages against each of them in an amount commensurate with the wrongful acts alleged here.


## TENTH CAUSE OF ACTION

### Private Nuisance
### <u>Against All Defendants</u>

257.     Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 256 of this complaint as if fully set forth here.

258.     Defendants intentionally gathered Debris on the property immediately adjacent to the Plaintiffs' land and home.

259.     The massive pile of Debris is/was uncovered and uncontained.

260.     Pieces of Debris are carried onto the Plaintiffs' land by wind and rain, and unreasonably interferes with the Plaintiffs' ability to enjoy their land and home for their private enjoyment.

261.     The continuous presence of the Debris is a continuous, substantial, and unreasonable interference with the use and enjoyment of the Plaintiffs' land, caused solely by the Defendants' conduct and/or failures to act.

262.     The substantial interference has caused and continues to cause, physical harm to the Plaintiffs and their guests, as the Debris may contain harmful, hazardous materials that have now intruded on the Plaintiffs' land and their living area.

263.     In addition to the private nuisance caused by the intrusion of materials and Debris, the Defendants may be held liable for the nuisance caused by the removal of the Fletcher Lot right of way on the Northwood Lot, which was ongoing for 18 months, as described above.

264.     Indeed, the long-existing concrete walkway was removed by Northwood School and its representatives in April 2019, and it was never reinstalled.

265.     Instead, Northwood School and its representatives installed sheets of plywood as a walking surface to replace the concrete walkway, which are not secure and do not conform with ADA requirements for a walkway surface.

266.     Defendants' interference with the Plaintiffs' easement was a continuous, substantial, and unreasonable interference with the Plaintiffs' use and enjoyment of their land rights, caused solely by the Defendants' conduct and/or failures to act.

267.     As a direct and proximate result of the foregoing, Plaintiffs were damaged and injured in an amount to be determined at trial.

268.     The conduct by Defendants was willful, malicious, oppressive, and reckless, and it was of such a nature that Plaintiffs claim punitive damages against each of them in an amount commensurate with the wrongful acts alleged here.

## DEMAND FOR JURY TRIAL

269.    Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs demand trial by jury in this action of all issues so triable.

## PRAYER FOR RELIEF

Plaintiffs, Wendy Fletcher and James Hughes, pray for relief and demand judgment as follows:

1.      That Plaintiffs be awarded compensatory damages against Defendants in an amount to be determined at trial;

2.      That Plaintiffs be awarded punitive damages against Defendants in an amount to be determined at trial;

3.      That this Court, pursuant to 42 U.S.C. § 1988, issue an order awarding Plaintiffs reasonable attorneys' fees, together with the costs of this action against Defendants; and

4.      That this Court award such other further relief, together with any other legal or equitable relief, or both, as the Court deems just and proper.

Dated:    April 1, 2022
          Buffalo, New York

**RUPP BAASE PFALZGRAF CUNNINGHAM** LLC
*Attorneys for Plaintiffs, Wendy Fletcher and James Hughes*


_____s/R. Anthony Rupp III_____
R. Anthony Rupp III
Chad A. Davenport
1600 Liberty Building
Buffalo, New York  14202
Phone:  (716) 854-3400
rupp@ruppbaase.com
davenport@ruppbaase.com
4894-5017-8842, v. 1

55