**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

WENDY FLETCHER & JAMES HUGHES,

                                        Plaintiffs,                    8:22-cv-00314 (BKS/DJS)

v.

VILLAGE OF LAKE PLACID, *et al.*,

                                        Defendants.

**Appearances:**

*For Plaintiffs:*
Rupp Pfalzgraf LLC
R. Anthony Rupp, III
Chad A. Davenport
1600 Liberty Building, 424 Main Street
Buffalo, New York 14202

*For the Village Defendants*:
Johnson & Laws, LLC
April J. Laws
646 Plank Road, Suite 205
Clifton Park, New York 12065

*For the Northwood Defendants:*
Hurwitz Fine P.C.
Scott D. Kagan
424 Main Street, Suite 1300
Buffalo, New York 14202

*For Defendant James Brooks*:
O'Connor, O'Connor, Bresee & First
Elizabeth J. Grogan
20 Corporate Woods Blvd.
Albany, New York 12211

*For the Burke Defendants*:
Kenney Shelton Liptak Nowak LLP
Daniel K. Cartwright
4615 North Street
Jamesville, New York 13078

*For the Bette & Cring Defendants*:
Burke, Scolamiero & Hurd, LLP
Andrea P. Demers
Mark J. Lemire
7 Washington Square, PO Box 15085
Albany, New York 12212

*For the O'Neil Defendants*:
Costello, Cooney & Fearon, PLLC
Daniel P. Fletcher
211 West Jefferson Street
Syracuse, New York 13202

**Hon. Brenda K. Sannes, Chief United States District Judge:**

**MEMORANDUM-DECISION AND ORDER**

## I.    INTRODUCTION

Plaintiffs Wendy Fletcher and James Hughes bring this civil rights action against

Defendants Village of Lake Placid and its employees Craig Randall, Art Devlin, Peter Holderied,

Jason Leon, Janet Bliss, Anita Estling, and Brad Hathaway (the "Village Defendants");

Northwood School of Lake Placid and its employees Michael Maher and Thomas Broderick (the

"Northwood Defendants"); James Brooks ("Defendant Brooks"); Bette & Cring Construction

Group, LLC and its employees Matthew Bette, Dick White, Patrick Gebbie, and John Doe (the

"Bette & Cring Defendants"); O'Neil Contracting, Bloomingdale, New York and its employee

John O'Neil (the "O'Neil Defendants"); and Burke Excavation Demolition, Inc. and its

employees Shawn Burke and Jodi Burke (the "Burke Defendants").  (Dkt. No. 60) ("Amended

Complaint").  The above employee defendants are sued in their official and individual capacities.

(*Id.*).

Now before the Court are the following motions from Defendants: 1) the Village

Defendants' Motion to Dismiss (Dkt. No. 65); 2) the Northwood Defendants' Motion to Dismiss

(Dkt. No. 74); 3) Defendant Brooks's Motion to Dismiss (Dkt. No. 76); 4) the Burke

Defendants' Motion to Dismiss (Dkt. No. 80); 5) the Bette & Cring Defendants' Motion to Dismiss (Dkt. No. 82); and 6) the O'Neil Defendants' Motion for Judgment on the Pleadings (Dkt. No. 105).  Plaintiffs oppose these motions.  (Dkt. Nos. 73, 88, 90, 93–94, 106).  Plaintiff also moves to strike certain materials cited by the Village Defendants.  (Dkt. No. 73).  Most of the moving Defendants have also filed reply papers.[1]  (Dkt. Nos. 78, 96, 98, 102–03).

## II.    FACTS[2]

Plaintiffs' claims arise from the renovation and construction of the Northwood School building on Main Street in the Village of Lake Placid (the "Northwood Project").  (Dkt. No. 60). Plaintiffs are residents of the Village, and their home and property at 18 Grace Way in Lake Placid is adjacent to the Northwood School building.  (*Id.*, ¶¶ 10–11, 47–49).  Plaintiffs' home is located on a property referred to as the "Fletcher Lot."  (*Id.*, ¶ 49).  Plaintiff Fletcher alleges that she is disabled due to multiple sclerosis and that "at times she needs to rely on a cane and a wheelchair for mobility." (*Id.*, ¶¶ 8–9). Plaintiffs sue various local government entities and employees involved in the Northwood Project, as well as private contractors/subcontractors and their employees who worked on the Northwood Project.

Due to the voluminous nature of the sixty-two page Amended Complaint, the Court only summarizes and discusses the facts alleged as necessary to evaluate the pending motions. Plaintiffs' factual allegations can generally be divided into two categories: 1) development actions; and 2) construction actions.

---

[1] This case was reassigned to the undersigned on July 28, 2023.  (Dkt. No. 104).

[2] The facts are drawn from the Amended Complaint, (Dkt. No. 60).  The Court assumes the truth of, and draws reasonable inferences from, the well-pleaded factual allegations, *see Lynch v. City of New York*, 952 F.3d 67, 74–75 (2d Cir. 2020), but does not accept as true the legal conclusions, *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### A.      Development Actions

Around December 2015, "a representative for Northwood School, met with Mr. Hughes and notified him of new construction and renovation efforts planned for Northwood School." (*Id.*, ¶ 60).  Thereafter, school officials trespassed onto the Fletcher Lot and directed a dumpster be placed there.  (*Id.*, ¶¶ 62, 67, 77).  In May 2017, Plaintiff Hughes met school officials and proposed a plan for the "new construction and renovation project that included no walkway closures, compliant overhead pedestrian protection, and conforming ADA practices."  (*Id.*, ¶ 74).

In January 2019, the Village Zoning Board of Appeals approved the Northwood School's own plan for the Northwood Project.  (*Id.*, ¶ 81).  On March 29, 2019, Defendant Broderick of the Northwood School wrote a letter to Village of Lake Placid Mayor Craig Randall and the Village Board of Trustee members requesting that the Board approve Northwood School's plan for the Northwood Project ("the "Means and Methods Plan").  (*Id.*, ¶ 112).  Various individuals from the Northwood School and the Bette & Cring Defendants (the contractor for the Project) were involved in preparing the Means and Methods Plan.  (*Id.*, ¶ 113).

On April 2, 2019, at 2:55 p.m., the Village Clerk gave notice on the Village's Facebook Page for a Special Board Meeting on April 3, 2019, at 9:00 a.m. ("the Northwood Special Board Meeting") (*Id.*, ¶ 114).  Plaintiffs did not receive notice of the Northwood Special Board Meeting, and the Village did not provide notice via the Village's email list.  (*Id.*, ¶ 116).  Because they did not receive notice, Plaintiffs did not attend the Northwood Special Board Meeting.  (*Id.*, ¶ 118).  Various individuals from the Village, the Northwood School, and Bette & Cring attended the meeting and "assisted with orchestrating the 'emergency' that prevented Plaintiffs from attending the Northwood Special Board Meeting to challenge the Means and Methods Plan proposed by Northwood School."  (*Id.*, ¶ 119).

As a result of the meeting, the Village Board passed a resolution approving the Means and Methods Plan for the Northwood Project (the "Resolution").  (*Id.*, ¶ 120).  Plaintiffs allege that the Means and Methods Plan required closures of public walkways and failed to comply with the ADA.  (*Id.*, ¶¶ 120–21).  Plaintiffs allege that the Means and Method "was intended to be a cost-saving measure when compared to the alternative means and methods plan that was proposed by Mr. Hughes."  (*Id.*, ¶ 121).

After the Means and Methods Plan was approved, school officials and contractors from Bette & Cring continued to trespass onto the Fletcher Lot.  (*Id.*, ¶ 124).  On April 12, 2019, the Northwood School directed Bette & Cring "to proceed with construction of barriers precluding Plaintiffs' access to their walkway easement on the Northwood Lot."  (*Id.*, ¶ 128).  On April 15, 2019, Plaintiff Hughes attended a Village Board Meeting and stated among other things that the Board had failed to notify Plaintiffs of the Special Board Meeting and that "the planned installation of barriers for the construction project would deny Ms. Fletcher's only pedestrian access to the Main Street public walkway."  (*Id.*, ¶ 129).  Plaintiff Hughes also presented his alternative plan, (*id.*, ¶ 130), which he later hand-delivered to the Village Clerk.  (*Id.*, ¶ 134).

## B.   Construction Actions

Construction nonetheless began on the Northwood Project using the Means and Methods Plan approved at the Special Village Board meeting; Plaintiffs allege that Defendants' construction activities "substantially interfered with the Plaintiffs' private enjoyment of their property and distributed potentially harmful construction debris and waste . . . onto the Plaintiffs' property."  (*Id.*, ¶ 136).  Plaintiffs also allege that "the contractors and subcontractors have created numerous barriers to the Plaintiffs' free access to the Main Street public walkway during the uncontained and intrusive new construction and renovation project at the Northwood School Main Street Campus."  (*Id.*).

4

For example, on April 16, 2019, contractors and subcontractors "closed the public walkway for no apparent reason or need and placed barriers on the public walkway that prevented the Plaintiffs' pedestrian access to the Main Street public walkway from the Fletcher Lot." (*Id.*, ¶ 137).  On May 6, 2019, contractors "started to use the Main Street public walkway to park heavy concrete and dumpster trucks which created ADA barriers to Ms. Fletcher's access to the Main Street public walkway that did not exist prior to the construction." (*Id.*, ¶ 140). Then on May 10, 2019, subcontractors "parked a large construction vehicle on the public walkway adjacent to the Fletcher Lot." (*Id.*, ¶ 141).  On May 19–20, 2019, subcontractors failed to properly cover a vessel containing hazardous materials, and on May 21, 2019, hazardous materials were blown from the Northwood Lot to the Fletcher Lot.  (*Id.*, ¶ 142).  In July, August, and September 2019, subcontractors working on the Northwood Project continued to create various barriers to Plaintiffs' access to Main Street.  (*Id.*, ¶¶ 147–151).  On September 3, 2019, Plaintiffs observed old paint debris "landing" on the Fletcher Lot.  (*Id.*, ¶ 153).

In addition, contractors and subcontractors working on the Northwood Project "have continually used cranes and boom lifts to hoist materials, construction workers, and equipment— including excavators—over the Fletcher Lot despite having written and verbal notice from the Plaintiffs that they object to such aerial intrusions of their property rights." (*Id.*, ¶ 156).

## III.    STANDARD OF REVIEW

To survive a motion to dismiss under Rule 12(b)(6) for failure to state a claim, "a complaint must provide 'enough facts to state a claim to relief that is plausible on its face.'" *Mayor & City Council of Balt. v. Citigroup, Inc.*, 709 F.3d 129, 135 (2d Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The plaintiff must provide factual allegations sufficient "to raise a right to relief above the speculative level." *Id*. (quoting *Twombly*, 550 U.S. at 555).  The Court must accept as true all factual allegations in the complaint and draw all

reasonable inferences in the plaintiff's favor.  *See EEOC v. Port Auth.*, 768 F.3d 247, 253 (2d Cir. 2014) (citing *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Under Rule 12(c) of the Federal Rules of Civil Procedure, any party may request judgment on the pleadings "after the pleadings are closed—but early enough not to delay trial." Fed. R. Civ. P. 12(c).  A motion to dismiss for lack of subject-matter jurisdiction under Rule 12(c) "is governed by the same standard that applies to a Rule 12(b)(1) motion," *Cruz v. AAA Carting & Rubbish Removal, Inc.*, 116 F. Supp. 3d 232, 239 (S.D.N.Y. 2015), while the standard for granting a Rule 12(c) motion to dismiss for failure to state a claim "is identical to that for granting a Rule 12(b)(6) motion for failure to state a claim," *see Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293, 301 (2d Cir. 2021) (quoting *Lynch v. City of New York*, 952 F.3d 67, 75 (2d Cir. 2020)).

A claim is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (internal quotation marks omitted), *aff'd*, 561 U.S. 247 (2010).  A district court resolving a motion to dismiss under Rule 12(b)(1) "must take all uncontroverted facts in the complaint . . . as true[] and draw all reasonable inferences in favor of the party asserting jurisdiction." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014).

## IV.   DISCUSSION

### A.   Plaintiffs' Claims

In the Amended Complaint, Plaintiffs allege seven claims pursuant to 42 U.S.C. § 1983: 1) violation of the right to procedural due process, as against Defendants Craig Randall, Art

Devlin, Peter Holderied, Jason Leon, Anita Estling, Janet Bliss, Brad Hathaway, Northwood School, Michael Maher, Thomas Broderick, James Brooks, Bette & Cring Construction, Matthew Bette, and Dick White; 2) violation of the right to substantive due process, as against all Defendants; 3) unlawful taking, as against all Defendants; 4) violation of the right to equal protection, as against Defendants Craig Randall, Art Devlin, Peter Holderied, Jason Leon, Anita Estling, Brad Hathaway, and Janet Bliss; 5) abuse of process, as against Defendants Craig Randall, Art Devlin, Peter Holderied, Jason Leon, Janet Bliss, Anita Estling, Northwood School, Michael Maher, James Brooks, Thomas Broderick, Bette & Cring, Matthew Bette, and Dick White; 6) conspiracy to violate Plaintiffs' constitutional rights, as against Defendants Craig Randall, Art Devlin, Peter Holderied, Jason Leon, Janet Bliss, Anita Estling, Northwood School, Michael Maher, Thomas Broderick, James Brooks, Bette & Cring, Matthew Bette, and Dick White; and 7) municipal liability, as against Defendant Village of Lake Placid.  (Dkt. No. 60, at ¶¶ 168–239, 255–266).  In addition, Plaintiffs allege claims for disability discrimination pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101–12213, as against all Defendants.  (*Id.*, ¶¶ 240–254).  Finally, Plaintiffs allege two claims pursuant to New York State law: 1) trespass, as against all Defendants; and 2) private nuisance, as against all Defendants. (*Id.*, ¶¶ 267–294).

### B.    The Village Defendants' Motion to Dismiss

In general, the Village Defendants move to dismiss all of Plaintiffs' claims against them on the grounds that: 1) Plaintiff Hughes lacks standing; 2) Plaintiffs have not adequately pleaded the personal involvement of any of the individual Village Defendants for purposes of Plaintiffs' Section 1983 claims; 3) Plaintiffs have not adequately pleaded the elements of any of the claims; and 4) the individual Village Defendants are entitled to legislative and/or qualified immunity. (Dkt. No. 65-1).

1.      **Standing**

"Article III of the Constitution limits federal courts' jurisdiction to certain 'Cases' and 'Controversies,'" and "'[o]ne element of the case-or-controversy requirement is that plaintiffs must establish they have standing to sue." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013) (citation and internal quotation marks omitted).  To establish standing, "the plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).  In order to establish injury in fact, "a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 339 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)).

Here, the Village Defendants argue that Plaintiff Hughes lacks standing because "he does not have a legal right or protected interest in the subject property or a qualified disability under the ADA." (Dkt. No. 65-1, at 17).  In response, Plaintiffs contend that Hughes has standing to proceed with the Section 1983 and State law claims based on his personal and financial interest in the Fletcher Lot.[3] (Dkt. No. 73-1, at 6–9).  The Court finds that Plaintiffs have alleged sufficient facts to plausibly infer that Plaintiff Hughes has suffered an injury in fact.  The gist of Plaintiffs' claims against the Village Defendants is that their actions in approving and carrying out the Northwood Project deprived Plaintiffs of their property rights.  Among other things, Plaintiffs allege that the Village Defendants' actions interfered with their use and enjoyment of the Fletcher Lot.  As to Plaintiff Hughes, Plaintiffs allege that he and Plaintiff Fletcher are

---

[3] Plaintiffs concede that Plaintiff Hughes does not have standing under the ADA, (Dkt. No. 73-1, at 6 n. 1), and thus any such claims brought by Plaintiff Hughes are dismissed.

partners and reside on the Fletcher Lot.  (Dkt. No. 60, ¶¶ 11, 49).  Plaintiffs further allege that in

2015 they entered into an agreement for Plaintiff Hughes to manage the Fletcher Lot, which is

owned by Plaintiff Fletcher.  (*Id.*, ¶¶ 51, 54).  The parties agreed to share in all net profits from

the Fletcher Lot.  (*Id.*, ¶ 56).  Based on the foregoing, although Plaintiff Hughes is not the owner

of the Fletcher Lot, Plaintiffs have nonetheless plausibly alleged that he derives a personal and

financial benefit from it, which has been harmed by the Village Defendants.[4]  These allegations

support standing at this stage.[5]  Therefore, dismissal is not warranted on this ground.  *See also*

*Puglisi v. Underhill Park Taxpayer Ass'n*, 947 F. Supp. 673, 682 (S.D.N.Y. 1996) ("Based on

the allegations and complaint, plaintiff has shown that he has a personal stake in the outcome of

the controversy due to both his economic and non-economic injury.  Hence, plaintiff has satisfied

the constitutional requirement of standing.").

### 2.    Personal Involvement

It is well-settled that, to establish a defendant's individual liability in a suit brought under

Section 1983, a plaintiff must show "the defendant's personal involvement in the alleged

constitutional deprivation."  *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013)

(citations omitted).  A plaintiff must "allege a tangible connection between the acts of a

defendant and the injuries suffered."  *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986).  Thus,

"a plaintiff must plead and prove 'that each Government-official defendant, through the official's

own individual actions, has violated the Constitution.'"  *Tangreti v. Bachmann*, 983 F.3d 609,

618 (2d Cir. 2020) (quoting *Iqbal*, 556 U.S. at 676).  The "factors" necessary to plead and

---

[4] The Village Defendants have previously submitted deed records showing that Plaintiff Hughes does not own the Fletcher Lot.  (*See* Dkt. No. 25-5).  Since Plaintiffs' own allegations confirm this fact, the Court need not address their request to strike the deed records as extrinsic evidence.  (Dkt. No. 73-1, at 5).

[5] Since the Village Defendants have not addressed the remaining requirements for standing, the Court declines to do so as well.  The Court also notes that these requirements overlap with the elements of Plaintiffs' claims, which the Court discusses below.

establish a Section 1983 violation "'will vary with the constitutional provision at issue' because the elements of different constitutional violations vary." *Id.* (quoting *Iqbal*, 556 U.S. at 676).

Here, the Village Defendants argue that Plaintiffs' claims must be dismissed because they have failed to "plead the requisite level of personal involvement by each Village Defendant." (Dkt. No. 65-1, at 19–24). Plaintiffs disagree. (Dkt. No. 73, at 9–18). Because the issue of personal involvement is intertwined with the elements of each Section 1983 claim, the Court will proceed to analyzing whether Plaintiffs have stated a claim against the individual Village Defendants. *See also A.S. v. City Sch. Dist. of Albany*, 585 F. Supp. 3d 246, 271 (N.D.N.Y. 2022) (recognizing that for some Section 1983 claims, "the question of the personal involvement of the individual defendants will merge with the question of whether" the plaintiff can plausibly state a claim).

### 3. Failure to State a Claim

#### a. Procedural Due Process

To state a claim under Section 1983 for the denial of procedural due process, a plaintiff must allege both the existence of a protected property or liberty interest, and that he or she was deprived of that interest without being afforded sufficient process. *See Bryant v. New York State Educ. Dep't*, 692 F.3d 202, 218 (2d Cir. 2012). As relevant here, Plaintiffs make the following allegations against the Village Defendants are part of their procedural due process claim:

> Plaintiffs had a property right in the Fletcher Lot.
>
> Defendants Craig Randall, Art Devlin, and Peter Holderied voted and approved the Resolution which they knew, or should have known, would seriously impede Plaintiffs' property rights, on an "emergency" basis, when no such emergency existed, and without providing the Plaintiffs with notice and without providing the Plaintiffs with an opportunity or forum in which to protest the means and methods proposed by Northwood School for its renovation and construction project.
>
> Defendants, Craig Randall, Art Devlin, Peter Holderied, Jason Leon, Janet Bliss, Anita Estling, Brad Hathaway . . . were involved in preparing the Means and

Methods Plan that was proposed by Northwood School in March/April 2019, and each of these defendants also was involved in orchestrating the "emergency" that allowed for the passing and approval of the Means and Methods Plan on an expedited basis without affording Plaintiffs an opportunity to be heard and time to file a legal challenge regarding the Means and Methods Plan.

In committing these acts, Defendants failed to provide reasonable notice of any kind to the Plaintiffs that the above-referenced Resolution would be considered and, thus, they prevented the Plaintiffs from attempting in any way to oppose or to prevent the passing of the Resolution that has caused the numerous violations of Plaintiffs' property rights described herein.

(Dkt. No. 60, ¶¶ 171–73, 75).

In general, the Village Defendants argue that Plaintiffs were afforded sufficient process regarding the Resolution.  (Dkt. No. 65-1, at 27).  However, the Village Defendants rely on an affidavit from Defendant Estling, which is not properly before the Court at this stage.[6]  (*See* Dkt. No. 25-1).  Further, Plaintiffs have alleged that the Village Clerk did not give notice for the April 3, 2019 Special Board Meeting until April 2, 2019 at 2:55 p.m., (Dkt. No. 60, at ¶ 114), whereas the New York State Public Officers Law requires a minimum 72-hour notice period for any Village Board Meeting.  *See* N.Y. Pub. Off. Law § 104 (1).  Accepting Plaintiffs' allegations as true, Plaintiffs were not afforded sufficient pre-deprivation process because no emergency existed, and the Village Defendants failed to provide notice and the opportunity to be heard before the Village Board passed the Resolution.  These allegations are generally sufficient to state a procedural due process claim.[7]  *See Catanzaro v. Weiden*, 188 F.3d 56, 61 (2d Cir. 1999) (discussing due process in emergency situations).

---

[6] The Court need not strike Defendant Estling's affidavit as requested by Plaintiffs, since the Court has not considered it in deciding the pending motions.

[7] The Court notes that the Village Defendants have not addressed the sufficiency of any post-deprivation remedies for purposes of Plaintiffs' procedural due process claim.

11

As to the individual Village Defendants specifically, Plaintiffs must tie each person to the alleged procedural due process violation, i.e. show personal involvement.  Plaintiffs allege that during the relevant time period, the individual Village Defendants held the following positions with Village of Lake Placid: 1) Defendant Randall was the Mayor; 2) Defendant Devlin was the Deputy Mayor; 3) Defendant Holderied was a Trustee and Department of Public Works Commissioner; 4) Defendant Leon was a Trustee and Department of Public Works Commissioner; 5) Defendant Bliss was the Village Attorney; 6) Defendant Estling was the Village Clerk; and 7) Defendant Hathaway was the Superintendent for the Lake Placid Highway Department.  (Dkt. No. 60, ¶¶ 15, 18, 21–25).  Plaintiffs allege that Defendants Randall, Devlin, and Holderied voted for the Resolution which deprived Plaintiffs of their property rights.  (*Id.*, ¶ 172).  This allegation is sufficient to plausibly infer their personal involvement.  *See Ruston v. Town Bd. for Town of Skaneateles*, No. 06 Civ. 927, 2009 WL 3199194, at *4, 2009 U.S. Dist. LEXIS 90964, at *12 (N.D.N.Y. Sept. 30, 2009) (finding that "involvement as a voting member of the board may be sufficient personal involvement" where "the alleged deprivations occurred as a result of a board vote"), *aff'd*, 610 F.3d 55 (2d Cir. 2010).

As to Defendants Leon, Bliss, Estling, and Hathaway, Plaintiffs allege that these Village officials were involved in preparing the Means and Methods Plan for the Northwood Project, and they were involved in "orchestrating" the emergency Village board meeting where the Plan was approved without notice to Plaintiffs.  (Dkt. No. 60, ¶¶ 119, 173).  Plaintiffs allege that Defendants Estling, and Hathaway were also present at the emergency Village board meeting.  (*Id.*, ¶ 119).  These allegations are not sufficient to plausibly infer personal involvement.  Mere participation in preparing for or attendance at a board meeting falls short of taking any concrete action that plausibly affected Plaintiffs' constitutional rights.  And Plaintiffs' allegation that

Defendants Leon, Bliss, Estling, and Hathaway "orchestrated" the meeting is conclusory and unsupported by any specific facts.

Therefore, Plaintiffs fail to state a procedural due process claim against Defendants Leon, Bliss, Estling, and Hathaway.  *See also Keles v. Davalos*, 642 F. Supp. 3d 339, 364 (E.D.N.Y. 2022) ("Without additional facts beyond committee membership, Plaintiff's factual allegations do not satisfy the personal involvement requirement necessary to sustain a § 1983 claim."); *Snead v. City of New York*, 463 F. Supp. 3d 386, 398 (S.D.N.Y. 2020) ("An officer's mere presence at the scene of a stop or arrest generally does not constitute sufficient personal involvement for § 1983 liability.").

### b.    Substantive Due Process

To state a claim for violation of substantive due process, a plaintiff must allege facts to show: 1) a "fundamental liberty interest" or a "valid property interest in a constitutionally-protected benefit"; and 2) that he was deprived of that interest in a manner that is "arbitrary," "conscience-shocking," or "oppressive in the constitutional sense."  *Doe v. Zucker*, 520 F. Supp. 3d 217, 258 (N.D.N.Y. 2021) (cleaned up); *see also Hurd v. Fredenburgh*, 984 F.3d 1075, 1088 (2d Cir. 2021) (noting that state-created rights are generally not recognized under the substantive due process clause unless they "trigger core constitutional interests").

Here, Plaintiffs make the following allegations against the Village Defendants as part of their substantive due process claim:

> Defendants acted arbitrarily, oppressively, and in a conscience-shocking manner in authorizing, encouraging, and condoning the multiple takings of Plaintiffs' property rights and their free enjoyment of the Fletcher Lot.

> Defendants improperly declared an emergency where no circumstances justifying emergency measures existed, provided no notice to the Plaintiffs, and consciously disregarded the rules and procedures in place to protect the due process rights of

the Plaintiffs, thereby intentionally depriving the Plaintiffs of their property rights without an opportunity to be heard.

Defendants intentionally or recklessly failed to provide Plaintiffs with an opportunity to be heard before deliberating, considering, and ultimately passing the Resolution that since has caused the invasion upon and taking of Plaintiffs' property rights as described above.

(Dkt. No. 60, ¶¶ 187–88, 194).

The Village Defendants argue that Plaintiffs' allegations, even if true, do not rise to the level of shocking the conscience.  (Dkt. No. 65-1, at 28).  The Court agrees.  First, the alleged takings in question involve various *temporary* construction-related intrusions on Plaintiffs' property such as: 1) barriers including dumpsters, walls, and trucks; 2) crane "flyovers"; 3) construction debris; and 4) wind-blown materials.  (Dkt. No. 60, ¶¶ 95, 120, 126, 152, 136–66). But none of these intrusions are so severe as to shock the conscience.  For example, this is not a case where Plaintiffs' property was seized, condemned, or wholly confiscated.  Second, Plaintiffs' allegation that they were denied notice and opportunity to be heard before the Village Board approved the Northwood Project, even if true, does not shock the conscience either. Plaintiffs' main complaint is that the plan did not comply with the ADA and led to walkway closures and construction-related intrusions on their property.  (*Id.*, ¶ 120).  Assuming the Village Defendants acted unreasonably in approving a flawed, cost-saving plan without Plaintiffs' input, their conduct was nonetheless not so egregious as to plausibly suggest a substantive due process violation.  *See Greathouse v. Meddaugh*, 632 F. Supp. 3d 3, 13 (N.D.N.Y. 2022) (recognizing that state action that is "incorrect or ill-advised" does not violate substantive due process").

Third, Plaintiffs' substantive due process claim is entirely redundant and duplicative of their claims for procedural due process violations and unlawful takings.  *See Velez v. Levy*, 401

F.3d 75, 94 (2d Cir. 2005) ("we have held that where a specific constitutional provision prohibits government action, plaintiffs seeking redress for that prohibited conduct in a § 1983 suit cannot make reference to the broad notion of substantive due process"); *Rother v. NYS Dept. of Corrections and Community Supervision*, 970 F. Supp. 2d 78, 100 (N.D.N.Y. 2013) ("substantive-due-process claims must be dismissed where they are merely duplicative of claims explicitly protected under other constitutional sources") (internal quotation and citation omitted). For all these reasons, Plaintiffs' substantive due process claim against the Village Defendants must be dismissed.

### c.      Unlawful Taking

The Takings Clause provides that "private property [shall not] be taken for public use, without just compensation."  U.S. Const. amend. V.  "To plead a taking under the Fifth (or Fourteenth) Amendment, a plaintiff must allege (1) that plaintiff possessed a valid property interest and (2) that there was a taking of that property interest under color of state law, without compensation."  *Young v. Suffolk Cnty.*, 705 F. Supp. 2d 183, 206 (E.D.N.Y. 2010) (citing, *inter alia*, *Cranley v. Nat'l Life Ins. Co. of Vt.*, 318 F.3d 105, 111 (2d Cir. 2003), *Story v. Green*, 978 F.2d 60, 62 (2d Cir. 1992)).

"The law recognizes two species of takings: physical takings and regulatory takings." *Buffalo Teachers Fed'n v. Tobe*, 464 F.3d 362, 374 (2d Cir. 2006).  A physical taking "occurs when there is either a condemnation or a physical appropriation of property."  *1256 Hertel Ave. Assocs., LLC v. Calloway*, 761 F.3d 252, 263 (2d Cir. 2014) (citing *Tahoe–Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 535 U.S. 302, 322 (2002)).  "A regulatory taking, by contrast, occurs where even absent a direct physical appropriation, governmental regulation of private property 'goes too far' and is 'tantamount to a direct appropriation or ouster.'"  *1256*

*Hertel Ave. Assocs.*, 761 F.3d at 263 (quoting *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 537 (2005)).

Here, Plaintiffs appear to allege a regulatory taking: that the Village Defendants' approval of the Means and Methods Plan for the Northwood Project led to temporary takings of their property related to construction activities involving barriers, crane flyovers, and debris and wind-blown materials.  (Dkt. No. 60, ¶¶ 95, 120, 126, 152, 136–66).  For an alleged regulatory taking, courts look at three factors to determine whether the interference with property rises to the level of a taking: "(1) the economic impact of the regulation on the claimant; (2) the extent to which the regulation has interfered with distinct investment-backed expectations; and (3) the character of the governmental action."  *Buffalo Teachers Fed'n*, 464 F.3d at 375 (quoting *Connolly v. Pension Ben. Guar. Corp.*, 475 U.S. 211, 225 (1986)).

The Village Defendants argue that "Plaintiffs do not plead facts sufficient to show that the passing of the Resolution and approval of Northwood School's means and methods plan and resulting temporary and occasional blockage of their easement at the direction of the contractors (not the Village) rises to the level of an unconstitutional taking."  (Dkt. No. 65-1, at 30).  The Village Defendants further contend that "Plaintiffs have not advanced any economic impact that the Resolution has had on their property."  (*Id.*).  In response, Plaintiffs claim in conclusory fashion that the above-noted alleged intrusions amount to takings.  (Dkt. No. 73-1, at 24–26).  But Plaintiffs do not point to any specific economic impact from the alleged takings.  Indeed, Plaintiffs do not address the factors involved in assessing a regulatory taking.  Although Plaintiffs allege that they have been deprived of rental and business income, (Dkt. No. 60, ¶ 190), there is no indication that Plaintiffs' property had ever generated such income; this vague

allegation falls short of plausibly showing any economic impact or interference with investment-backed expectations that could support a regulatory taking.

Therefore, Plaintiffs' unlawful taking claim against the Village Defendants must be dismissed.[8]  *See 74 Pinehurst LLC v. New York*, 59 F.4th 557, 566 (2d Cir. 2023) (affirming dismissal of regulatory taking claim where landlords failed to allege "any specific impact on profit or revenue"); *see also Kabrovski v. City of Rochester*, 149 F. Supp. 3d 413, 424–25 (W.D.N.Y. 2015) (dismissing regulatory taking claim where the complaint, *inter alia*, "does not indicate the economic impact that the Defendants' actions have had on the Plaintiff, except in vague and conclusory terms," and "fails to explain how Defendants' actions have interfered with Plaintiff's reasonable investment-backed expectations") (internal quotation and citation omitted).

### d.    Equal Protection

The equal protection clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV, § 1.  The equal protection clause therefore "requires that the government treat all similarly situated people alike."  *Harlen Assocs. v. Incorporated Vill. of Mineola*, 273 F.3d 494, 499 (2d Cir. 2001) (citing *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)).  Here, Plaintiffs do not allege a traditional class-based equal protection claim, but rather they invoke two different but related theories of unequal treatment: class-of-one and selective enforcement.

To state a claim for an equal protection violation based on a "class-of-one" theory, a plaintiff must allege that he "has been intentionally treated differently from others similarly

---

[8] Although the parties have not specifically raised the issue, Plaintiffs' taking claim is also unripe at this juncture because they have failed to allege exhaustion of administrative remedies.  Under New York law, there is a "reasonable, certain and adequate provision, *Williamson Cnty. Regl. Plan. Commn. v. Hamilton Bank of Johnson City*, 473 U.S. 172, 194 (1985), for seeking compensation for a regulatory taking: the property owner may bring an Article 78 proceeding to compel compensation under Article I, Section 7 of the New York Constitution.

situated and that there is no rational basis for the difference in treatment." *Analytical Diagnostic Labs, Inc. v. Kusel*, 626 F.3d 135, 140 (2d Cir. 2010) (quoting *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)).  Put another way, a plaintiff must allege facts to plausibly show that: (1) "no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy," and (2) "the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendants acted on the basis of a mistake." *Id.* (citation omitted).

To state a claim for an equal protection violation based on a "selective enforcement" theory, a plaintiff must allege that: "(1) the person, compared with others similarly situated, was selectively treated, and (2) the selective treatment was motivated by an intention to discriminate on the basis of impermissible considerations, such as race or religion, to punish or inhibit the exercise of constitutional rights, or by a malicious or bad faith intent to injure the person." *Hu v. City of New York*, 927 F.3d 81, 91 (2d Cir. 2019) (quoting *Zahra v. Town of Southold*, 48 F.3d 674, 683 (2d Cir. 1995)).  Thus, under this test, a plaintiff must allege facts to plausibly show both "disparate treatment and impermissible motivation." *Id.* (quoting *Bizzarro v. Miranda*, 394 F.3d 82, 87 (2d Cir. 2005)).

As relevant here, Plaintiffs make the following allegations in support of their class-of-one and selective enforcement based equal protection claim:

> The allegations described above demonstrate that Plaintiffs appear to have been singled out and treated very differently from other property owners in the Village of Lake Placid.
>
> Defendants violated Plaintiffs' well-established rights under the Equal Protection Clause of the Fourteenth Amendment in that they deprived and/or seriously intruded on Plaintiffs' property rights, without due process of law, as well as denying them equal protection of the law in failing to remediate the safety concerns

identified by the Plaintiffs regarding their use of their property rights while remaining attentive to special requests and variances requested by those Village of Lake Placid residents and entities who are regarded with favor by the Village leadership, including the Board of Trustees and Village elected leaders

Upon information and belief, Defendants conspired to pass the Resolution without providing Plaintiffs notice because of Defendants Randall, Devlin, Holderied, Leon, Estling, Hathaway, and Bliss's personal animus toward the Plaintiffs.

Defendants Randall, Devlin, Holderied, Leon, Estling, Hathaway, and Bliss selectively enforced the Village of Lake Placid's emergency Village Board meeting provisions due to their personal animus towards the Plaintiffs.

(Dkt. No. 60, ¶¶ 212–14, 216).

The Village Defendants primarily argue that Plaintiffs' equal protection claim must be dismissed because they fail to allege similarly situated comparators. (Dkt. No. 65-1, at 32–34). In response, Plaintiffs argue that they have adequately alleged that "by selecting Plaintiffs' property to be unlawfully taken for the purpose of conferring a benefit to Northwood School, the Village Defendants have targeted Plaintiffs for adverse treatment for no rational basis." (Dkt. No. 73-1, at 28). But Plaintiffs do not respond to the Village Defendants' argument or point to any specific allegations of similarly situated comparators that could support their equal protection claim. Looking at the Amended Complaint, Plaintiffs' allegations of comparators are entirely vague, identifying only unnamed "property owners in the Village of Lake Placid" and "Village of Lake Placid residents and entities who are regarded with favor by the Village leadership." (Dkt. No. 60, ¶¶ 212–13). For example, Plaintiffs do not allege that any other property owner was treated differently with respect to another construction project in Lake Placid.

In sum, Plaintiffs' vague allegations fail to state an equal protection claim under either class-of-one or selective enforcement theories. *See Levine v. New York State Police*, No. 21 Civ. 1181, 2022 WL 1987845, at *11, 2022 U.S. Dist. LEXIS 100188, at *29–30 (N.D.N.Y. June 6,

2022) (dismissing class-of-one equal protection claim where the plaintiff failed to allege a particular, similarly situated comparator who was treated differently); *Weinberg v. Village of Clayton, New York*, No. 17 Civ. 21, 2018 WL 4214363, at *19 (N.D.N.Y. Mar. 21, 2018) (dismissing selective enforcement equal protection claim where the plaintiffs failed to plead "sufficient facts for the Court to determine that it is plausible that a jury could ultimately determine that the comparators are similarly situated") (internal quotation and citation omitted); *Christian v. Town of Riga*, 649 F. Supp. 2d 84, 94 (W.D.N.Y. 2009) ("[A]t the motion to dismiss stage bald allegations that defendants preferred one party over another are inadequate to state a claim for equal protection.").

### e.     Abuse of Process

To state an abuse of process claim under Section 1983, a plaintiff must satisfy the corresponding State law elements of abuse of process, which, in New York, require a plaintiff to show that a defendant: "(1) employ[ed] regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse o[r] justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process." *Savino v. City of New York*, 331 F.3d 63, 76 (2d Cir. 2003) (quoting *Cook v. Sheldon*, 41 F.3d 73, 80 (2d Cir. 1994)). "The crux of a malicious abuse of process claim is the collateral objective element." *Ying Li v. City of New York*, 246 F. Supp. 3d 578, 616 (E.D.N.Y. 2017) (quoting *Kraft v. City of New York*, 696 F. Supp. 2d 403, 416 (S.D.N.Y. 2010)). "To plead a collateral objective, a plaintiff must plausibly plead not that defendant acted with an improper motive, but rather an improper purpose: a plaintiff must claim that the defendant aimed to achieve a collateral purpose beyond or in addition to his criminal prosecution." *Id.* (cleaned up) (quotation marks omitted) (citing *Savino*, 331 F.3d at 77).

Here, Plaintiffs make the following allegations against the Village Defendants as part of

their abuse of process claim:

> Defendants committed an abuse of process by attempting to utilize the emergency
> Village Board meeting process to accomplish an improper purpose—*i.e.* passage of
> the Resolution in a way that avoids public scrutiny and discourse.
>
> The improper purposes included, inter alia, to cause financial harm to the Plaintiffs
> due to the defendants' personal animus towards the Plaintiffs; to increase the value
> and profitability of property owned by favorable property owners in the Village of
> Lake Placid, including Northwood School; to harm the Plaintiffs' reputation; to
> deprive the Plaintiffs of their property rights without affording the Plaintiffs an
> opportunity to be heard; and to violate the Plaintiffs' rights secured to them by the
> Constitution of the United States
>
> In accomplishing these improper purposes, Defendants fraudulently conveyed that
> they had deprived the Plaintiffs of their Constitutionally-protected rights by lawful
> process.
>
> In this regard, Defendants employed legal process in an improper manner and with
> ulterior motives.

(Dkt. No. 60, ¶¶ 222–25).

The Village Defendants argue that Plaintiffs fail to state a claim for abuse of process

because they have not plausibly alleged that the Resolution approving the Northwood Project

served an improper purpose. (Dkt. No. 65-1, at 35). In response, Plaintiffs assert that the

Village Defendants' improper purpose was "to get" Plaintiff Hughes and retaliate against

Plaintiffs "for seeking the arrest of Northwood School Board Member Jennifer Holderied Webb,

who is the sister of Peter Holderied." (Dkt. No. 73-1, at 30). Even assuming these motives

could plausibly amount to an improper purpose, however, Plaintiffs' claim would nonetheless

fail because they have not alleged the issuance of any legal or judicial process. A Village

Board's passage of a Resolution does not involve using the legal or judicial system in any way

that could be plausibly construed as an abuse of process. *See 3H Enterprises, Inc. v. Dwyre*, 182

F. Supp. 2d 249, 259 (N.D.N.Y. 2001) ("In order to state a claim for abuse of process, the

complaint must allege the use of judicial process[.]").  Further, "Section 1983 liability may not be predicated on a claim of malicious abuse of *civil* process."  *Wagner v. Hyra*, 518 F. Supp. 3d 613, 627 (N.D.N.Y. 2021) (emphasis in original) (quoting *Alroy v. City of New York L. Dept.*, 69 F. Supp. 3d 393, 402 (S.D.N.Y. 2014)).  For these reasons, Plaintiffs' abuse of process claim must be dismissed.

### f.        Conspiracy

"To prove a § 1983 conspiracy, a plaintiff must show: (1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages."  *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999).  "[A]lthough the pleading of a conspiracy will enable a plaintiff to bring suit against purely private individuals, the lawsuit will stand only insofar as the plaintiff can prove the *sine qua non* of a § 1983 action: the violation of a federal right."  *Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 119 (2d Cir. 1995) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970)).

Here, Plaintiffs make the following allegations against the Village Defendants as part of their conspiracy claim:

> Employees for the Village of Lake Placid, while acting under the color of state law, conspired with employees of Northwood School and Bette & Cring to deprive the Plaintiffs of their rights guaranteed under the Fourth, Fifth, and Fourteenth Amendments.

> The deprivation of Plaintiffs' constitutionally protected rights was carried out by all defendants collectively as co-conspirators

> Defendants Northwood School, Michael Maher, Thomas Broderick, James Brooks, Bette & Cring Construction Group, LLC, Matthew Bette, and Dick White entered into an agreement with the Village of Lake Placid defendants and acted in concert with them to inflict unconstitutional injury.

> Defendant Northwood School, Michael Maher, Thomas Broderick, Bette & Cring Construction Group, LLC, Matthew Bette, and Dick White had an agreement with the other defendants to intrude on Plaintiffs' property rights without their knowledge and approval and knew, or should have known, that an objection to the Resolution and approval of the means and methods proposed by Northwood School had been or would be lodged.

(Dkt. No. 60, ¶¶ 231–34).

The Village Defendants argue that Plaintiffs fail to state a conspiracy claim because they do not adequately allege an agreement or an overt act in furtherance of the conspiracy. (Dkt. No. 65-1, at 37–38). In response, Plaintiffs contend that their allegations "suffice to render it plausible that the Village Defendants conspired with the Northwood School Defendants to pass the Resolution approving the Northwood School Project as quickly as possible and in violation of New York State Public Officers Law to avoid a legal challenge from Plaintiffs." (Dkt. No. 73-1, at 31). However, Plaintiffs do not point to a specific agreement, instead arguing that "the sequence of events described in the amended complaint plausibly supports the inference that non-state and state actors jointly and willfully acted in concert to violate Plaintiffs' civil rights." (*Id.*, at 33).

The amended complaint, however, alleges an agreement between the Village Defendants and Northwood and Bette & Cring Defendants in only the most general, vague, and conclusory terms. (Dkt. No. 60, ¶¶ 233–34). Plaintiffs' theory appears to be that the Village Defendants conspired with the Northwood School and Bette & Cring to fast-track and approve an improper construction plan for the Northwood Project without giving Plaintiffs notice or the opportunity to be heard and challenge the plan. But Plaintiffs do not allege any factual basis to plausibly suggest a meeting of the minds to achieve an unlawful end. Indeed, Plaintiffs' own allegations suggest that the Means and Methods Plan "was intended to be a cost-saving measure when compared to the alternative means and methods plan that was proposed by Mr. Hughes." (*Id.*, ¶

121).  In other words, even assuming Plaintiffs' allegations are true, it cannot be plausibly inferred that the co-conspirators agreed to act with the objective of violating Plaintiffs' right to procedural due process.[9]

Therefore, Plaintiffs' conspiracy claim must be dismissed.  *See Webb v. Goord*, 340 F.3d 105, 110 (2d Cir. 2013) (recognizing that a plaintiff alleging a conspiracy "must provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end") (internal quotation marks and citations omitted); *Ciambriello v. County of Nassau*, 292 F.3d 307, 325 (2d Cir. 2002) ("[C]omplaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed; diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct.") (citation omitted).

### g.    Municipal Liability

A municipality such as the Village of Lake Placid "may not be sued under § 1983 for an injury inflicted solely by its employees or agents," and is liable only when it actually deprives, through the execution of its policies, an individual of his constitutional rights.  *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978).  "To establish liability under *Monell*, a plaintiff must show that he suffered the denial of a constitutional right that was caused by an official municipal policy or custom."  *Bellamy v. City of New York*, 914 F.3d 727, 756 (2d Cir. 2019).

---

[9] As discussed above, a conspiracy is not a stand-alone Section 1983 claim but rather must be specifically connected to an underlying constitutional violation.

A municipal policy or custom may be established where the facts show: 1) a formal policy, officially promulgated by the municipality, *Monell*, 436 U.S. at 690; 2) action taken by the official responsible for establishing policy with respect to a particular issue, *Pembaur v. Cincinnati*, 475 U.S. 469, 483–84 (1986); 3) unlawful practices by subordinate officials so permanent and widespread as to practically have the force of law, *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127–30 (1988); or 4) a failure to train or supervise that amounts to "deliberate indifference" to the rights of those with whom the municipality's employees interact, *City of Canton v. Harris*, 489 U.S. 378, 388 (1989); *see also Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007).  To prevail on a municipal liability claim, a plaintiff must show "a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *Outlaw v. City of Hartford*, 884 F.3d 351, 373 (2d Cir. 2018) (quoting *City of Canton*, 489 U.S. at 385).

Here, Plaintiffs appear to seek to bring municipal liability claims against the Village of Lake Placid based on policymaker and failure to train/supervise theories.  They make the following related allegations:

> Defendant the Village of Lake Placid developed and maintained policies, customs, and practices exhibiting deliberate indifference to the Plaintiffs' property rights.
>
> At all relevant times, defendant Village of Lake Placid was aware that defendants Craig Randall, Art Devlin, Peter Holderied, Janet Bliss, Jason Leon, Anita Estling, and Brad Hathaway were inadequately trained regarding to citizens' property and procedural due process rights under the Fifth and Fourteenth Amendments, yet defendant Village of Lake Placid maintained a policy or custom of failing to provide defendants Craig Randall, Art Devlin, Peter Holderied, and Janet Bliss training on the Fifth and Fourteenth Amendments or adequate supervision over them.
>
> It was the policy or custom, or both, of defendant Village of Lake Placid to inadequately supervise and train its employees and agents, including defendants Craig Randall, Art Devlin, Peter Holderied, Janet Bliss, Jason Leon, Anita Estling,

and Brad Hathaway, so it thereby failed to prevent the constitutional violations against Plaintiffs.

Upon information and belief, defendant Village of Lake Placid maintained a policy, custom, or practice of interfering with Plaintiffs' property rights and disregarding Plaintiffs' legitimate safety concerns caused by Defendants' uncontained and unrestricted construction activities at the Northwood School Main Campus.

Upon information and belief, defendant Village of Lake Placid maintained a policy, custom, or practice of interfering with Plaintiffs' property rights with reckless disregard to the due process rights of Plaintiffs because the Village knew that Plaintiffs would challenge their unlawful construction project.

Defendants failed to properly screen and supervise the contractors and subcontractors who worked for the Northwood School Main Street Campus Renovation, despite their duty to screen and supervise the contractors and subcontractors proposed in Northwood School's proposed means and methods. The Village of Lake Placid retained or allowed these contractors and subcontractors to be retained by Northwood School despite their history of inappropriate and unlawful acts that were documented by Plaintiffs and shared with the appropriate policymakers for the Village of Lake Placid.

Upon information and belief, Village of Lake Placid policymakers, including, but not limited to, Mayor Craig Randall and Deputy Mayor Art Devlin, condoned and encouraged the inappropriate behavior by contractors and subcontractors herein in an effort to retaliate against Plaintiffs for voicing their legitimate concerns.

(Dkt. No. 60, ¶¶ 257–62).

The Village Defendants argue that Plaintiffs' municipal liability claim must be dismissed because the Amended Complaint "fails to identify a single Village policy and/or custom and any deprivation of their rights." (Dkt. No. 65-1, at 25). In response, Plaintiffs contend that the Amended Complaint "plausibly alleges that Craig Randall and Art Devlin are final policymakers for the Village by virtue of their position as Mayor and Deputy Mayor . . . Peter Holderied and Jason Leon were final policymakers for the Village in their position as Trustees for the Village Board . . . Janet Bliss and Anita Esling were final policymakers as the Village attorney and clerk . . . and Brad Hathaway was acting as a final policymaker in his position as the Superintendent for the Village Highway Department." (Dkt. No. 73-1, at 19–20). Plaintiffs claim that each of

these alleged policymakers "initiated, participated in, and personally condoned repeated and ongoing violations of Plaintiffs' civil rights." (*Id.*, at 20).

First, the Court finds that Plaintiffs have not plausibly alleged a municipal liability claim for failure to train/supervise because the Amended Complaint fails to identify a specific deficiency in training/supervision closely related to a specific constitutional injury. *See City of Canton*, 489 U.S. at 379 ("the identified deficiency in the training program must be closely related to the ultimate injury"); *Triano v. Town of Harrison, NY*, 895 F. Supp. 2d 526, 539 (S.D.N.Y. 2012) (dismissing *Monell* claim where "Plaintiff has merely alleged that the Town failed to train its employees, without providing any supporting factual detail about alleged deficiencies in the training program, or regarding other instances of police misconduct which could be attributed to a failure to train").

However, the Court finds that Plaintiffs have plausibly alleged a municipal liability claim based on the policymaking actions of Defendants Randall and Devlin. As discussed above, Plaintiffs have stated a procedural due process claim against Defendants Randall, Devlin, and Holderied. Notably, Plaintiffs allege that Defendants Randall and Devlin were Mayor and Deputy Mayor of Lake Placid and exercised policymaking authority, (Dkt. No. 60, ¶¶ 16–20), and it can also be plausibly inferred that Defendants Randall and Devlin exercised their policymaking authority in voting for the Resolution for the Northwood Project which allegedly deprived Plaintiffs of their property rights. (*Id.*, ¶ 72). At this stage, these allegations are sufficient to state a municipal liability claim, i.e. that Plaintiffs suffered a procedural due process violation that was caused by Village policymakers.[10] *See I.S. by and through Disla v.*

---

[10] The Court notes, however, that Plaintiffs have failed to allege that Defendants Holderied, Leon, Janet Bliss, Estling, and Hathaway were final policymakers, nor have Plaintiffs specifically described their policymaking authority. Therefore, Plaintiffs have *only* stated a municipal liability claim based on the policymaking actions of Defendants Randall and Devlin.

*Binghamton City Sch. Dist.*, 486 F. Supp. 3d 575, 603 (N.D.N.Y. 2020) (denying motion to dismiss municipal liability claim where the plaintiff alleged that the defendant was a final policymaker and that harm to the plaintiff was under his control).

      **h.**     **ADA Claim**[11]

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Thus, to state a claim for relief under Title II of the ADA, a plaintiff must allege facts to plausibly show that: "(1) that she is a qualified individual with a disability; (2) that she was excluded from participation in a public entity's services, programs or activities or was otherwise discriminated against by a public entity; and (3) that such exclusion or discrimination was due to her disability." *Tardif v. City of New York*, 991 F.3d 394, 404 (2d Cir. 2021) (quoting *Davis v. Shah*, 821 F.3d 231, 259 (2d Cir. 2016) (internal quotation marks omitted)). "A plaintiff may base her Title II claim on any of three theories of liability: disparate treatment (intentional discrimination), disparate impact, or failure to make a reasonable accommodation." *Id.*

Plaintiff Fletcher appears to allege a disparate treatment claim. As relevant here, Plaintiff Fletcher alleges that she is disabled due to multiple sclerosis; the Village of Lake Placid maintains sidewalks and streets for public use; and "Defendants Craig Randall, Art Devlin, Peter Holderied, Janet Bliss, Jason Leon, Anita Estling, Brad Hathaway acted in concert with the Village of Lake Placid in creating barriers to Ms. Fletcher's access to Main Street from the

---

[11] This analysis applies to Plaintiff Fletcher only. As discussed above, Plaintiff Hughes has withdrawn any claim for violation of the ADA. (Dkt. No. 73-1, at 6 n. 1).

Fletcher Lot." (Dkt. No. 60, ¶¶ 243–45). Based on these allegations, the Court finds that Plaintiff Fletcher has plausibly alleged that she is a qualified individual with a disability, that the Village of Lake Placid is a public entity, and that Plaintiff Fletcher was excluded from using the Village's public sidewalks.

Nonetheless, the Village Defendants seek dismissal of Plaintiff Fletcher's Title II claim for two reasons. First, the Village Defendants correctly point out that there is no individual liability under Title II, which contemplates suit against a "public entity." (Dkt. No. 65-1, at 38). Plaintiffs do not respond to this argument. Therefore, Plaintiff Fletcher's Title II claim is dismissed as against the individual Village Defendants. *See also Durr v. Slator*, 558 F. Supp. 3d 1, 34 (N.D.N.Y. 2021) (dismissing Title II claims brought against individual defendants).

Second, the Village Defendants argue that Plaintiff Fletcher's Title II claim must be dismissed because "Plaintiffs do not allege any facts to support the assertion that their alleged mistreatment was based on Plaintiff Fletcher's alleged disability." (Dkt. No. 65-1, at 40). In response, Plaintiffs assert that they have stated a valid claim based on their allegations that "the Village repeatedly has failed to maintain the system of sidewalks that abut the subject property, done nothing the curb the proliferation of construction tools and machines on the sidewalk, and failed to introduce regulations or a means and methods plan that governs and restricts the conduct of third parties as it relates to ADA compliance." (Dkt. No. 73-1, at 37) (citing Dkt. No. 60, ¶¶ 127–29, 135, 137, 146–47, 155, 159–62). The Court finds that Plaintiffs' allegations are sufficient at this stage to plausibly infer that Plaintiff Fletcher has been excluded from using the Village of Lake Placid's public sidewalks based on her disability. Among other things, this inference is supported by Plaintiffs' allegations that the Village of Lake Placid had notice of Plaintiff Fletcher's disability but rushed through an ADA-deficient construction plan and then

failed to remedy access issues despite Plaintiffs' complaints.  (Dkt. No. 60, ¶¶ 83, 93, 112–20, 129, 135, 138).   Therefore, Plaintiff Fletcher has stated a disability discrimination claim under Title II of the ADA against the Village of Lake Placid.

### i.       Trespass & Nuisance

The Village Defendants seek dismissal of Plaintiffs' New York State law trespass and nuisance claims on several grounds: 1) Plaintiffs failed to serve a timely notice of claim; 2) Plaintiffs failed to exhaust their administrative remedies; 3) the Village Defendants are entitled to Governmental Immunity; and 4) Plaintiffs fail to state a claim.  (Dkt. No. 65-1, at 44–49). Plaintiffs have not responded to these arguments.  Therefore, Plaintiffs' trespass and nuisance claims against the Village Defendants are deemed abandoned and ordered dismissed.  *See Barmore v. Aidala*, 419 F. Supp. 2d 193, 201 (N.D.N.Y. 2005) (recognizing that "[t]he failure to oppose a motion to dismiss a claim is deemed abandonment of the claim").

### 4.       Immunity

As discussed above, Plaintiffs have plausibly alleged a procedural due process violation arising out of the acts by Defendants Randall, Devlin, and Holderied, i.e., voting to approve the Resolution for Northwood Project without providing sufficient notice to Plaintiffs.  Nonetheless, the individual Village Defendants argue that they are shielded from liability by legislative and/or qualified immunity.  (Dkt. No. 65-1, at 40–44).

### a.       Legislative Immunity

In general, "[l]egislators are entitled to absolute immunity from civil liability for their legislative activities."  *Harhay v. Town of Ellington Bd. of Educ.*, 323 F.3d 206, 210 (2d Cir. 2003).  "The test for determining whether an act is legislative 'turns on the nature of the act, rather than on the motive or intent of the official performing it.'"  *Id.* (citing *Bogan v. Scott–*

*Harris*, 523 U.S. 44, 54 (1998)). "Under this functional test, immunity depends on the nature of the act itself, not the identity of the actor performing it." *Id.*

Defendants Randall, Devlin, and Holderied argue that they engaged in legislative activity when they voted to approve the complained of Resolution. (Dkt. No. 65-1, at 41). In response, Plaintiffs assert that the Village Defendants are not entitled to legislative immunity because they "acted in bad faith an in furtherance of personal interests" by expediting and approving the Resolution without sufficient notice to Plaintiffs. (Dkt. No. 73-1, at 39). The Court finds that the alleged actions of Defendants Randall, Devlin, and Holderied in voting to approve the Resolution fall within the sphere of legislative activity. Crucially, the vote is not alleged to have only affected Plaintiffs—it involved approving a construction plan for a private school building. This sort of policymaking clearly flows from the legislative function. Having made this finding, Defendants Randall, Devlin, and Holderied are entitled to legislative immunity, and any improper motives they may have harbored are irrelevant. Therefore, Defendants Randall, Devlin, and Holderied are entitled to dismissal of Plaintiffs' procedural due process claim against them.[12] *See S. Lyme Prop. Owners Ass'n, Inc. v. Town of Old Lyme*, 539 F. Supp. 2d 547, 559 (D. Conn. 2008) ("The enforcement policies may have been flawed, and the Defendant Commissioners may have acted in bad faith, as is alleged by the Plaintiffs, but legislative immunity is absolute and does not depend on these considerations."); *Livant v. Clifton*, 334 F. Supp. 2d 321, 326 (E.D.N.Y. 2004) (dismissing Section 1983 claims against Town Board

---

[12] Since Defendants Randall, Devlin, and Holderied are entitled to legislative immunity, the Court need not decide whether they are also entitled to qualified immunity. The Court also notes that the dismissal of Plaintiffs' procedural due process claim against Defendants Randall, Devlin, and Holderied does not affect Plaintiffs' municipal liability claim against the Village of Lake Placid. *See Goldberg v. Town of Rocky Hill*, 973 F.2d 70, 74 (2d Cir. 1992) ("we hold that there is no immunity defense, either qualified or absolute, available to a municipality sought to be held liable under 42 U.S.C. § 1983").

members because their actions in holding a hearing, voting, and approving a resolution which authorized the removal of a nuisance were "clearly legislative in nature").

### C. The Northwood Defendants' Motion to Dismiss

Next, the Court turns to the Northwood Defendants' motion to dismiss. As background, Plaintiffs allege that Defendant Northwood School "is a private boarding school with a principal place of business located at 92 Northwood Road" in Lake Placid. (Dkt. No. 60, ¶ 26). Plaintiffs allege that Defendants Michael Maher and Thomas Broderick were employed by the Northwood School as the Headmaster and Assistant Headmaster, respectively. (*Id.*, ¶¶ 27, 29).

As to specific actions, Plaintiffs allege that Defendant Broderick and other school officials entered the Fletcher Lot without notification or approval. (*Id.*, ¶ 62). Plaintiffs allege that Defendants Maher and Broderick and others turned off the water supply to the Fletcher Lot three times during the Northwood Project. (*Id.*, ¶ 66). Plaintiffs allege that in October 2016, Defendant Broderick directed a dumpster be placed on the Fletcher Lot. (*Id.*, ¶ 67). Plaintiffs also allege that on March 29, 2019, Defendant Broderick wrote a letter requesting that the Village Board approve the Northwood School's Means and Methods Plan. (*Id.*, ¶ 112). Plaintiffs allege that Defendants Broderick and Maher were both involved in preparing the Means and Methods Plan. (*Id.*, ¶¶ 113, 121). Plaintiffs allege that a Special Board meeting was held on April 3, 2019, which Defendant Broderick attended. (*Id.*, ¶¶ 114, 119). Plaintiffs further allege that on April 4, 2019, Defendant Broderick and others trespassed onto the Fletcher Lot. (*Id.*, ¶ 124). Plaintiffs also allege that Defendants Maher and Broderick controlled, directed, and supervised construction activities on the Northwood Project. (*Id.*, ¶¶ 28, 30).

Plaintiffs assert the following claims against the Northwood Defendants: violation of procedural due process, violation of substantive due process; unlawful taking; abuse of process; conspiracy; violation of the ADA; trespass; and nuisance. (*Id.*, ¶¶ 184–209; 221–254; 267–294).

1.     **Section 1983 Claims**

First, the Northwood Defendants move to dismiss Plaintiffs' Section 1983 claims on the basis that the Northwood Defendants are private actors and Plaintiffs have "failed to allege facts demonstrating that the Northwood Defendants acted *in concert with* a state actor to commit an unconstitutional act." (Dkt. No. 74-1, at 10). In response, Plaintiffs contend that "[t]he intertwined acts of the Northwood School Defendants and Village Defendants were one in the same and resulted in the violation of Plaintiffs' Constitutional rights protected by the Fourth, Fifth, and Fourteenth Amendments of the United States Constitution." (Dkt. No. 90, at 9–10).

As Plaintiffs recognize, their Section 1983 claims against the Northwood Defendants are derivative of and revolve around the same alleged facts as Plaintiffs' Section 1983 claims against the Village Defendants. Plaintiffs generally allege that the Northwood Defendants "acted in concert" and conspiracy with the Village Defendants to violate Plaintiffs' constitutional rights. (*Id.*, ¶¶ 181, 197, 207, 227, 233, 237). However, as discussed above, Plaintiffs have failed to state a claim against the Village Defendants for a constitutional violation, with the exception of procedural due process. And Plaintiffs have failed to allege facts to plausibly show a conspiracy between the Village Defendants and the Northwood Defendants. Therefore, Plaintiffs' claims against the Northwood Defendants for violation of substantive due process, unlawful taking, abuse of process, and conspiracy must be dismissed for the same reasons discussed above with respect to the Village Defendants.

As to procedural due process, the Court will address the Northwood Defendants' substantive arguments. The Northwood Defendants contend that they are private actors and were not involved in providing notice and opportunity to be heard regarding the Northwood Project. (Dkt. No. 74-1, at 16–18). In response, Plaintiffs contend that Northwood Defendants acted jointly with the Village Defendants "to orchestrate an 'emergency' to deliberate and ultimately

pass a resolution approving the means and methods plan proposed by the Northwood School Defendants."  (Dkt. No. 90, at 10).

In general, a plaintiff alleging a violation of her constitutional rights under Section 1983 must show state action.  *Fabrikant v. French*, 691 F.3d 193, 206 (2d Cir. 2012); *see also* 42 U.S.C. § 1983 (imposing liability on persons who act "under color of any [state] statute, ordinance, regulation, custom, or usage").  For purposes of Section 1983, the actions of a private entity such as the Northwood School can be attributed to the State when: "(1) the entity acts pursuant to the coercive power of the State or is controlled" by the State (the "compulsion test"), (2) the State provides significant encouragement to the entity, the entity is a willful participant in joint activity with the State, or the entity's functions are entwined with State policies (the "joint action test" or "close nexus test"); or (3) when the entity has been delegated a public function by the State (the "public function test").  *Sybalski v. Indep. Grp. Home Living Program, Inc.*, 546 F.3d 255, 257 (2d Cir. 2008) (cleaned up) (citation omitted).  The "fundamental question" for each test is whether the private party's conduct is "fairly attributable" to the state such that it bears responsibility.  *Fabrikant*, 691 F.3d at 207.  There is a "two-part analytical approach to th[e] question of 'fair attribution' ": a "[p]laintiff must show that the allegedly wrongful action occurred as a result of the exercise of a state-created right or privilege, or by a state-imposed rule of conduct"; and "that the party charged with the deprivation is a person who is a state official or someone whose conduct is otherwise chargeable to the State."  *Dahlberg v. Becker*, 748 F.2d 85, 89 (2d Cir. 1984).

Here, Plaintiffs invoke the joint action test.  However, their allegations fail to plausibly show a close nexus between the Northwood Defendants and the State action underlying Plaintiffs' procedural due process claim.  As discussed above, Plaintiffs' procedural due process

claim alleges that the Village Defendants held an "emergency" Village Board meeting to approve the Resolution for the Northwood Project, without giving Plaintiffs notice and the opportunity to be heard.  Plaintiffs allege that Defendants Maher and Broderick, among others, prepared the Means and Methods Plan that was proposed by the Northwood School.  (Dkt. No. 60, ¶¶ 121, 173).  But Plaintiffs do not specifically allege that the Northwood Defendants organizing the Village Board meeting, provided notice, or voted on the proposal.  Plaintiffs' allegation that Defendant Broderick assisted with "orchestrating the 'emergency,'" (*id.*, ¶ 119), is entirely conclusory and insufficient to infer joint action.

In sum, Plaintiffs have failed to plausibly allege that the Northwood Defendants acted under color of State law.  Therefore, Plaintiffs' procedural due process claim against the Northwood Defendants must also be dismissed.  *See also Missere v. Gross*, 826 F. Supp. 2d 542, 567 (S.D.N.Y. 2011) ("The Complaint alleges no more than that the Storm King Defendants sought to invoke the Village's regulatory apparatus to defeat Missere's applications.  Without more, this is not joint action."); *Serbalik v. Gray*, 27 F. Supp. 2d 127, 131 (N.D.N.Y. 1998) ("A private party does not act under color of state law when she merely elicits but does not join in an exercise of official state authority.") (citation omitted).

### 2.      ADA Claims

Next, the Northwood Defendants argue that Plaintiffs' ADA claims against them fail as a matter of law.  (Dkt. No. 74-1, at 26).  Specifically, the Northwood Defendants argue that: 1) Title II of the ADA applies only to public entities; 2) Defendants Maher and Broderick cannot be held liable under Title III; and 3) Plaintiffs cannot seek monetary damages under Title III.  (*Id.*, at 27–28).  In response, Plaintiffs do not address the Northwood Defendants' argument with

respect to Plaintiffs' Title II claim, which is deemed abandoned.[13]  As to Title III, Plaintiffs

contend that the Northwood Defendants, despite having knowledge of Plaintiff Fletcher's

disability, "encouraged, supervised, ratified, and condoned" numerous construction activities

which have interfered with her use of public sidewalks.  (Dkt. No. 90, at 25).

In general, Title III of the ADA states that "[n]o individual shall be discriminated against

on the basis of disability in the full and equal enjoyment of the goods, services, facilities,

privileges, advantages, or accommodations of any place of public accommodation by any person

who owns, leases (or leases to), or operates a place of public accommodation."  42 U.S.C. §

12182 (a).  Therefore, to state a claim under Title III, Plaintiff Fletcher must allege: "(1) that she

is disabled within the meaning of the ADA; (2) that defendants own, lease, or operate a place of

public accommodation; and (3) that defendants discriminated against her by denying her a full

and equal opportunity to enjoy the services defendants provide."  *Camarillo v. Carrols Corp.*,

518 F.3d 153, 156 (2d Cir. 2008).  "Title III is designed to prevent a facility offering public

accommodation from denying individuals with disabilities 'goods [and] services,' *e.g.,* 42 U.S.C.

§§ 12182(a), 12182(b)(2)(A)(ii) . . . the ADA does not impose a civility code."  *Krist v.*

*Kolombos Rest. Inc.*, 688 F.3d 89, 97 (2d Cir. 2012).

Plaintiff Fletcher's Title III claim fails for several reasons.  First, the Amended

Complaint is devoid of any factual allegations that the Northwood Defendants own, lease, or

operate a place of public accommodation.  Rather, Plaintiff Fletcher's claim focuses on the

public sidewalks owned and operated by the Village of Lake Placid—which the Northwood

Defendants allegedly blocked with construction activities.  Even if the latter allegation is true, it

does not add up to an ADA claim against the Northwood School because the Village necessarily

---

[13] The Court notes that Title II expressly applies to public entities, *see* 42 U.S.C. § 12132, and by Plaintiffs' own
allegations, the Northwood School is a private entity.

retains authority over its sidewalks and the ability to make accommodations for disabled persons.[14]  *See Pickern v. Pier 1 Imports (U.S.), Inc.*, 457 F.3d 963, 966 (9th Cir. 2006) (affirming decision that private store was not liable under Title III of the ADA where it did not own, lease, or operate the city-owned area where the plaintiff sought an accommodation).

Plaintiff Fletcher's Title III claim against Defendants Maher and Broderick fails for largely the same reason.  In general, "the question of whether a person is a proper defendant under the ADA turns . . .  on . . . whether the defendant *owns, leases, or operates* a place of public accommodation within the meaning of the ADA."  *Coddington v. Adelphi Univ.*, 45 F. Supp. 2d 211, 215 (E.D.N.Y. 1999) (emphasis in original).  "Courts considering individual liability under the ADA have focused on the issue of control and whether the named defendant 'operates' a place of public accommodation within the meaning of the ADA."  *Id.*  "The term 'operate' has been interpreted as being in a position of authority and having the power and discretion to perform potentially discriminatory acts."  *Id.*  "Such discriminatory acts may result in the imposition of liability under the ADA where they are the result of the exercise of the individual's own discretion, and not merely the implementation of institutional policies or the mandates of superiors."  *Id.*  Here, Plaintiffs do not plausibly allege that Defendants Maher and Broderick controlled the *public* sidewalk *owned* by the Village of Lake Placid.  At most, Plaintiffs have alleged that Defendants Maher and Broderick implemented and oversaw an ADA-deficient construction plan that was approved by Village of Lake Placid.

---

[14] *See also Barden v. City of Sacramento*, 292 F.3d 1073, 1076 (9th Cir.2002) ("[M]aintaining public sidewalks is a normal function of a city and without a doubt something that the [City] does. Maintaining their accessibility for individuals with disabilities therefore falls within the scope of Title II.") (citation omitted); *Montoya v. City of San Diego*, 434 F. Supp. 3d 830, 845 (S.D. Cal. 2020) ("Public sidewalks are not featured on the list enumerating entities that constitute a place of public accommodation, and those that are on the list are either actual physical places where goods or services are open or made available to the public or where the public goes to get goods or services.").

Plaintiffs' claim is also subject to dismissal because Plaintiff Fletcher seeks only monetary relief, which is not "is not available to private individuals under Title III of the ADA." *Powell v. Natl. Bd. of Med. Examiners*, 364 F.3d 79, 86 (2d Cir. 2004). Plaintiffs argue that "[s]hould the alleged conditions that give rise to the amended complaint's ADA claims still exist at the time of trial, Plaintiffs should be allowed to request injunctive relief against the Northwood School Defendants to rectify the dangerous conditions that impair Ms. Fletcher's ability to enjoy her property." (Dkt. No. 90, at 26–27). However, this scenario is entirely speculative and cannot support a Title III claim. *See Deshawn E. by Charlotte E. v. Safir*, 156 F.3d 340, 344 (2d Cir. 1998) ("A plaintiff seeking injunctive or declaratory relief cannot rely on past injury to satisfy the injury requirement but must show a likelihood that he or she will be injured in the future."). Accordingly, Plaintiff Fletcher's Title III ADA claim against the Northwood Defendants must be dismissed.

### 3.   State Law Claims

Having dismissed Plaintiffs' federal claims against the Northwood Defendants, the Court declines to exercise supplemental jurisdiction over Plaintiffs' State law claims.[15] Plaintiffs' claims for trespass and nuisance revolve around the sort of state law property issues best handled in state court. Therefore, these claims are dismissed. *See* 28 U.S.C. § 1367(c)(3); *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine ... will point toward declining to exercise jurisdiction over the remaining state-law claims."); *see also Drake v. Village of Lima*, 530 F. Supp. 3d 285, 294–95 (W.D.N.Y.

---

[15] Plaintiffs also agree that "should the Court dismiss their § 1983 claims, then the Court should not exercise supplemental jurisdiction over their state-law claims." (Dkt. No. 90, p. 27 n. 5).

2021) (declining to exercise supplemental jurisdiction over "remaining causes of action [that] involve quintessential areas of state law such as negligence, nuisance, and trespass").

### D.      Defendant Brooks's Motion to Dismiss

As background, Plaintiffs allege that Defendant Brooks was employed as an attorney for the Northwood School and that he was also a member of the Northwood School Board.  (Dkt. No. 60, ¶ 31).  Among other things, Plaintiffs allege that Defendant Brooks "assisted with directing and controlling the scope, location, and extent of the construction activities for the Northwood School Main Street Campus" and "held a supervisory position with respect to the contractors and subcontractors who were assigned to the Northwood School Project."  (*Id.*, ¶ 32). Plaintiffs also allege that Defendant Brooks "acted in concert" and conspiracy with the Village Defendants to violate Plaintiffs' constitutional rights.  (*Id.*, ¶¶ 181, 197, 207, 227, 233, 237).

As to specific actions, Plaintiffs allege that Defendant Brooks and others turned off the water supply to the Fletcher Lot three times during the Northwood Project.  (*Id.*, ¶ 66).  Plaintiffs allege that on another occasion, when they protested "Northwood School's illegal use of the Fletcher Lot, [Defendant] Brooks called the police and demanded that Ms. Fletcher be arrested." (*Id.*, ¶ 67).  Further, Plaintiffs allege that Defendant Brooks was "involved with and assisted in preparing the Means and Methods Plan that was proposed to the Village Board by Mr. Broderick on behalf of Northwood School."  (*Id.*, ¶ 113).  Plaintiffs allege that when construction began, Defendant Brooks "direct[ed] the general contractor to proceed with construction of barriers precluding Plaintiffs' access to their walkway easement on the Northwood Lot."  (*Id.*, ¶ 128).

Plaintiffs assert the following claims against Defendant Brooks: violation of procedural due process, violation of substantive due process; unlawful taking; abuse of process; conspiracy; violation of the ADA; trespass; and nuisance.  (*Id.*, ¶¶ 184–209; 221–254; 267–294).

1.      **Section 1983 Claims**

Defendant Brooks argues that Plaintiffs' Section 1983 claims must be dismissed because he is not a state actor and at all relevant times he was acting as the attorney for the Northwood School.  (Dkt. No. 76-1, at 7–12).  In response, Plaintiffs contend that Defendant Brooks may be held liable as a state actor based on their allegations that he acted jointly and conspired with the Village Defendants.  (Dkt. No. 88, at 8–13).  Plaintiffs also assert that Defendant Brooks was not acting as an attorney when he allegedly violated their rights.  (*Id.*, at 13–14).

The Court finds that Plaintiffs' Section 1983 claims against Defendant Brooks fail for largely the same reasons discussed above with respect to the Northwood Defendants.  Plaintiffs' allegations that Defendant Brooks, a private attorney, acted jointly with the Village Defendants are conclusory, unsupported by specific facts, and insufficient to plausibly infer that he acted under color of state law.  And to the extent Plaintiffs claim that Defendant Brooks conspired with the Village Defendants, Plaintiffs have failed to plausibly allege an agreement among the co-conspirators to achieve an unlawful end, as discussed above.  Moreover, Plaintiffs' allegations against Defendant Brooks are intertwined with those against the Village Defendants, and therefore, suffer from the same flaws.  For example, to the extent Plaintiffs claim that Defendant Brooks joined with the Village Defendants in effecting an unlawful taking, Plaintiffs allegations are insufficient to show any constitutional violation, much less one that can be traced back to Defendant Brooks.

Further, Plaintiffs do not allege any facts to plausibly show a close nexus between Defendant Brooks and the State action underlying Plaintiffs' procedural due process claim.  Although Plaintiffs allege that Defendant Brooks helped prepare the Means and Methods Plan, they do not provide any factual basis to plausibly infer that he was involved in organizing the

Village Board meeting, providing notice, or approving the Means and Methods Plan.  Therefore, Plaintiffs' Section 1983 claims against Defendant Brooks must be dismissed.[16]

### 2.    ADA Claim

Next, Defendant Brooks argues that Plaintiffs fail to state against him pursuant to Title III of the ADA because "there is no allegation that [he] owns, leases or operates any place of public accommodation of any kind, let alone one that is alleged to have discriminated against the plaintiffs herein."  (Dkt. No. 76-1, at 13).  In response, Plaintiffs contend that their allegations "are sufficient to support the contention that Defendant had and exercised control over the public place of accommodation at issue in this litigation—i.e., the public sidewalk in front of Plaintiffs' property and the Northwood School construction project."  (Dkt. No. 88, at 16).

As relevant here, Plaintiffs allege that during construction of the Northwood Project, Defendant Brooks "direct[ed] the general contractor to proceed with construction of barriers precluding Plaintiffs' access to their walkway easement on the Northwood Lot."  (Dkt. No. 60, ¶ 128).  As with Defendants Maher and Broderick, Plaintiffs' allegations are not sufficient to plausibly infer that Defendant Brooks effectively controlled/exercised authority over a public sidewalk owned by the Village of Lake Placid.  Put another way, assuming a public sidewalk is a public accommodation for purposes of Title III, Plaintiffs have failed to allege facts to show that Defendant Brooks "operated" it.  And even if Defendant Brooks directed contractors to put up barriers blocking the sidewalk, Plaintiffs' own allegations suggest that he did so not as a policymaker but to implement the Village-approved Means and Methods Plan.  (*Id.*, ¶ 121).  Therefore, Plaintiffs' Title III claim against Defendant Brooks must be dismissed.  *See also*

---

[16] Having found that Plaintiffs fail to allege that Defendant Brooks acted under color of State law, the Court need not address the argument that he cannot be held liable for actions taken in his role as an attorney.

*Coddington*, 45 F. Supp. 2d at 215 ("Applying the 'control' test, courts have been reluctant to hold individual employees who are not policy makers liable under the ADA.").

### 3.     State Law Claims

Having dismissed Plaintiffs' federal claims against Defendant Brooks, the Court declines to exercise supplemental jurisdiction over Plaintiffs' State law claims, for the same reasons discussed above with respect to the Northwood Defendants.  Therefore, Plaintiffs' State law claims against Defendant Brooks are dismissed.

### E.     The Bette & Cring Defendants' Motion to Dismiss

As relevant here, Plaintiffs allege that Defendant Bette & Cring Construction Group, LLC "was assigned the role of general contractor for the Northwood School construction project."  (Dkt. No. 60, ¶ 34).  Plaintiffs allege that Defendant Matthew Bette was the owner of Bette & Cring and a Trustee for the Northwood School.  (*Id.*, ¶ 35).  Plaintiffs further allege that Defendant Dick White was a Division Manager who was "ultimately responsible for the Northwood School construction project for Bette & Cring."  (*Id.*, ¶ 36).  Plaintiffs allege that Defendant Patrick Debbie was a Project Manager who was "involved in supervising and directing the Northwood School construction project for Bette & Cring."  (*Id.*, ¶ 37).  Plaintiffs also allege that a Bette & Cring employee named "Ken" was the on-site manager for construction on the Northwood Project.  (*Id.*, ¶ 38).

As to specific actions, Plaintiffs allege that the Bette & Cring Defendants were involved in the preparation of the Means and Methods Plan.  (*Id.*, ¶ 121).  Plaintiffs allege that on April 4, 2019, Bette & Cring employees trespassed on the Fletcher Lot.  (*Id.*, ¶ 124).  Plaintiffs also allege that on April 16, 2019, the Bette & Cring Defendants and others "closed the public walkway for no apparent reason or need and placed barriers on the public walkway that prevented the Plaintiffs' pedestrian access to the Main Street public walkway from the Fletcher

Lot." (*Id.*, ¶ 137).  Plaintiffs further allege that on May 6, 2019, the Bette & Cring Defendants "started to use the Main Street public walkway to park heavy concrete and dumpster trucks which created ADA barriers to Ms. Fletcher's access to the Main Street public walkway that did not exist prior to the construction." (*Id.*, ¶ 140).  And Plaintiffs allege that the Bette & Cring Defendants and others "purposely plac[ed] barriers in front of the Plaintiffs' access point to the Main Street public walkway from the Fletcher Lot at night when there [was] no construction work going on." (*Id.*, ¶ 160).

Plaintiffs assert the following claims against the Bette & Cring Defendants: violation of procedural due process, violation of substantive due process; unlawful taking; abuse of process; conspiracy; violation of the ADA; trespass; and nuisance.  (*Id.*, ¶¶ 184–209; 221–254; 267–294).

### 1.      Section 1983 Claims

First, the Bette and Cring Defendants argue that Plaintiffs "fail to sufficiently allege facts supporting the conclusion that the Bette & Cring defendants, who are private contractors, acted under color of state law." (Dkt. No. 82-1, at 11).  The Bette and Cring Defendants further argue that Plaintiffs fail to state a claim against them for violation of procedural and substantive due process, unlawful taking, abuse of process, and conspiracy.  (*Id.*, at 19–23).  In response, Plaintiffs contend that "the sequence of events described in the amended complaint plausibly supports the inference that non-state and state actors jointly and willfully acted in concert to violate Plaintiffs' Constitutional rights." (Dkt. No. 94, at 14–15).

First, there is no dispute that Bette & Cring Construction Group is a private entity and its employees are private actors.  Nonetheless, Plaintiffs' theory appears to be that the Bette & Cring Defendants conspired and acted jointly with the Village Defendants by helping develop the Means and Methods Plan for the Northwood Project and contracting to carry it out.  As discussed above, Plaintiffs have failed to plausibly allege a conspiracy between the Village

Defendants, the Northwood Defendants, and the Bette & Cring Defendants. Nor do Plaintiffs'

allegations show joint action between the Bette & Cring Defendants and the Village Defendants.

As discussed above, Plaintiffs' allegation that the Bette & Cring Defendants acted in concert

with the Village Defendants is entirely conclusory. Moreover, the Amended Complaint does not

specifically allege that the Bette & Cring Defendants entered into a contract with the Village

Defendants, much less identify any terms.

And even if a contract was alleged, "[a]cts of such private contractors do not become acts

of the government by reason of their significant or even total engagement in performing public

contracts." *Rendell-Baker v. Kohn*, 457 U.S. 830, 841 (1982). Without more, a contract between

the Bette & Cring Defendants and the Village of Lake Placid does not permit a plausible

inference that the Bette & Cring Defendants were State actors. Indeed, "[a] private actor can

only be 'a willful participant in joint activity with the State or its agents' if the two share some

common goal to violate the plaintiff's rights." *Betts v. Shearman*, 751 F.3d 78, 85 (2d Cir.

2014). In this case, however, there are no allegations that would permit an inference that the

Bette & Cring Defendants and the Village Defendants worked together with the common goal of

violating Plaintiffs' constitutional rights. Accordingly, the Court finds that Plaintiffs have failed

to plausibly allege that the Bette & Cring Defendants acted under color of State law. *See also*

*Graham-Johnson v. City of Albany*, 471 F. Supp. 3d 506, 518 (N.D.N.Y. 2020) (dismissing

Section 1983 claims against private engineer hired by city where the plaintiffs' allegations failed

to plausibly show joint action).

In any event, assuming for argument's sake that the Bette & Cring Defendants were

acting under color of State law, Plaintiffs' allegations fail to plausibly state a Section 1983 claim.

As to procedural due process, Plaintiffs allege that Bette & Cring employees were among those

who assisted with orchestrating the "emergency" Special Board Meeting. (Dkt. No. 60, ¶ 119). But beyond this speculation, Plaintiffs do not identify any specific facts to suggest that Bette & Cring employees had a role in organizing the meeting, providing notice, or approving the Means and Methods Plan—all of which at the root of Plaintiffs' claim and within the clear purview of Village officials. As to substantive due process, although the alleged actions of the Bette & Cring Defendants cannot be condoned, they fall short of shocking the conscience. And Plaintiffs' claims for unlawful taking and abuse of process fail for all the reasons discussed above with respect to the Village Defendants. Therefore, Plaintiffs' Section 1983 claims against the Bette & Cring Defendants must be dismissed.

### 2.    ADA Claims

The Bette and Cring Defendants also seek dismissal of Plaintiffs' claims against them under Title II and Title III of the ADA. (Dkt. No. 82-1, at 15–19). Plaintiffs do not oppose dismissal of the former claim, which is deemed abandoned. As to Title III, the Bette and Cring Defendants argue that Plaintiffs' claim fails for several reasons: "(1) a public sidewalk is not a place of public accommodation, (2) the Bette & Cring defendants do not own, lease, or operate the sidewalk; and (3) plaintiffs have still failed to plead that the Bette & Cring defendants denied plaintiff Fletcher access to public accommodations because of her disability." (Dkt. No. 82-1, at 18). In response, Plaintiffs contend that a public sidewalk is a place of public accommodation and that their allegations are sufficient to plausibly infer that the Bette & Cring Defendants discriminated against Plaintiff Fletcher based on her disability. (Dkt. No. 94, at 16–17).

Even conceding these two points to Plaintiffs, they have failed to plausibly allege that the Bette & Cring Defendants owned, leased, or operated public sidewalks. As discussed above, Plaintiffs' allegations indicate that the sidewalks are owned by the Village of Lake Placid and that various contractors/subcontractors temporarily blocked them during constructive activities

related to the Northwood Project.  These allegations do not plausibly suggest that the Bette &

Cring Defendants "operated" the sidewalks for purposes of Title III of the ADA.  Further,

Plaintiffs do not seek any specific injunctive relief as against the Bette & Cring Defendants

regarding ongoing barriers or access issues.  Therefore, Plaintiffs' Title III claim against the

Bette & Cring Defendants must be dismissed.

### 3. State Law Claims

Having dismissed Plaintiffs' federal claims against the Bette & Cring Defendants, the

Court declines to exercise supplemental jurisdiction over Plaintiffs' State law claims against

them, for the reasons discussed above.

### F. The Remaining Motions

The remaining motions by the Burke Defendants and the O'Neil Defendants involve the

same claims and cover mostly the same ground.  (Dkt. Nos. 80, 105).  Therefore, the Court will

consider their motions in tandem.

As relevant here, Plaintiffs allege that "Burke Excavation was assigned the role of

subcontractor for the Northwood School construction project, and was responsible for the

abatement of hazardous, asbestos-containing materials at the Northwood School property."  (Dkt.

No. 60, ¶ 41).  Plaintiffs allege that Defendants Shawn and Jodi Burke were owners of Burke

Excavation and "directed and controlled the asbestos abatement activities performed by Burke

Excavation for the Northwood School Main Street Campus project."  (*Id.*, ¶¶ 42–43).  Plaintiffs

allege that the Burke Defendants acted in concert with the Village Defendants to violate

Plaintiffs' rights.  (*Id.*, ¶¶ 197, 207).

As to specific actions, Plaintiffs allege that on April 16, 2019, the Burke Defendants

placed a dumpster on the Main Street public walkway.  (*Id.*, ¶ 137).  Plaintiffs allege that on May

10, 2019, the Burke Defendants "parked a large construction vehicle on the public walkway

adjacent to the Fletcher Lot, which "create[ed] a barrier preventing Ms. Fletcher's use of the public walkway." (*Id.*, ¶ 141). Plaintiffs allege that on or about May 21, 2019, the Burke Defendants failed to properly store "hazardous, asbestos-containing" construction materials, which were blown by the wind onto the Fletcher Lot. (*Id.*, ¶ 142).

Plaintiffs allege that Defendant O'Neil Contracting was also a subcontractor for the Northwood Project. (Dkt. No. 60, ¶ 39). Plaintiffs allege that Defendant John O'Neil was the owner of the company and "directed and controlled the construction activities performed by O'Neil Contracting for the Northwood School Main Street Campus project." (*Id.*, ¶ 40).

As to specific actions, Plaintiffs allege that on April 16, 2019, the O'Neil Defendants and others "closed the public walkway for no apparent reason or need and placed barriers on the public walkway that prevented the Plaintiffs' pedestrian access to the Main Street public walkway from the Fletcher Lot." (*Id.*, ¶ 137). Plaintiffs also allege that the O'Neil Defendants and others "purposefully plac[ed] barriers in front of the Plaintiffs' access point to the Main Street public walkway from the Fletcher Lot at night when there [was] no construction work going on." (*Id.*, ¶ 161).

Plaintiffs assert the following claims against the Burke Defendants and the O'Neil Defendants: violation of substantive due process; unlawful taking; violation of the ADA; trespass; and nuisance. (*Id.*, ¶¶ 184–209; 240–254; 267–294).

### 1. Section 1983 Claims

The Burke/O'Neil Defendants argue that Plaintiffs' Section 1983 claims against them must be dismissed because they are subcontractors and not state actors. (Dkt. No. 80-1, at 6–8; Dkt. No. 105-3, at 7–10). In response, Plaintiffs contend that the Burke/O'Neil Defendants "worked under the Village Defendants' approval and guidance pursuant to a contract that was entered into by the Village of Lake Placid and the Bette & Cring Defendants for the Northwood

School Project." (Dkt. No. 93, at 15; Dkt. No. 106, at 12).[17]  Plaintiffs further argue that the

Burke/O'Neil Defendants "developed and implemented a policy to ignore Plaintiffs' property

rights and complaints regarding the same, and to act in a generally rude and inconsiderate

manner towards Plaintiffs." (Dkt. No. 93, at 15; Dkt. No. 106, at 13).

First, the Court finds that Plaintiffs have failed to plausibly allege that the Burke/O'Neil

Defendants acted under color of State law, for the same reasons discussed above with respect to

the Bette & Cring Defendants.  Notably, Plaintiffs allege that the Burke/O'Neil Defendants

entered into subcontracts with the Bette & Cring Defendants, and thus there is no direct link

between the Burke/O'Neil Defendants and the Village Defendants.  And Plaintiffs' conclusory

allegation that the Burke/O'Neil Defendants acted "in concert" with the Village Defendants is

not supported by any specific facts.  Nor are there are any allegations that permit an inference

that the Burke/O'Neil Defendants worked together with the common goal of violating Plaintiffs'

constitutional rights.  Thus, it cannot be plausibly inferred that the actions of the Burke/O'Neil

Defendants are "fairly attributable" to the Village Defendants.  *Fabrikant*, 691 F.3d at 207.

Second, even assuming the Burke/O'Neil Defendants acted under color of State law,

Plaintiffs fail to state either a substantive due process or unlawful taking against them.  As

discussed above, Plaintiffs' allegations in this case do not rise to the level of shocking the

conscience.  At most, Plaintiffs have alleged that the Burke/O'Neil Defendants acted negligently

and/or rudely in their work on the Northwood Project, which is not enough to support a

substantive due process claim.  *See O'Connor v. Pierson*, 426 F.3d 187, 203 (2d Cir. 2005)

("mere negligence will never give rise to a substantive due process violation").  And as discussed

---

[17] As discussed above, the Amended Complaint does not contain any specific allegation that the Village of Lake Placid and the Bette & Cring Defendants entered into a contract for the Northwood Project.

above, Plaintiffs have not alleged sufficient facts to plausibly suggest a regulatory taking. Accordingly, Plaintiffs' Section 1983 claims against the Burke Defendants and O'Neil Defendants must be dismissed.

### 2.    ADA Claims

The Burke/O'Neil Defendants seek dismissal of Plaintiffs' Title III claims on the grounds that individuals cannot be held liable under Title III and Plaintiffs seek only monetary relief.[18] (Dkt. No. 80-1, at 10–12; Dkt. No. 105-3, at 11).  In response, Plaintiffs argue that during work on the Northwood Project, the Burke/O'Neil Defendants created unnecessary barriers "that denied Ms. Fletcher and other ADA-qualified members of the public the full and equal participation and enjoyment of the Main Street sidewalk because of their disability."  (Dkt. No. 93, at 12; Dkt. No. 106, at 10).  Plaintiffs also contend that individuals can be held liable under Title III, and that they do seek equitable relief.  (Dkt. No. 93, at 13–14; Dkt. No. 106, at 10–11).

As discussed above, individuals *can* be held liable under Title III of the ADA if there are sufficient allegations that the individual *owns, leases, or operates* a place of public accommodation.  Here, Plaintiffs do not make any such allegation with respect to Defendants Shawn Burke, Jodi Burke, or John O'Neil.  Plaintiffs' allegations that these individuals were involved in temporarily blocking public sidewalks on several occasions do not plausibly show that they effectively controlled/exercised authority over the sidewalks for purposes of stating a Title III claim.  The same is true for Plaintiffs' allegations against Burke Excavation and O'Neil Contracting.  And once again, the Court notes that Plaintiffs have not requested specific equitable relief for their Title III claims.  As to the Burke/O'Neil Defendants specifically, there is

---

[18] As discussed above, Plaintiffs cannot state a Title II claim against private entities or individuals, and Plaintiffs have not attempted to argue otherwise.  To the extent Plaintiffs allege such claims against the Burke/O'Neil Defendants, the must be dismissed.

no allegation that they are continuing to block the sidewalk so as to suggest that equitable relief could be imposed.  For these reasons, Plaintiffs' Title III claims against the Burke Defendants and O'Neil Defendants must be dismissed.

### 3.      State Law Claims

Having dismissed Plaintiffs' federal claims against the Burke Defendants and O'Neil Defendants, the Court declines to exercise supplemental jurisdiction over Plaintiffs' State law claims against them, for the reasons discussed above.

## V.    CONCLUSION[19]

For these reasons, it is hereby

ORDERED that the Village Defendants' Motion to Dismiss (Dkt. No. 65) is GRANTED in part and DENIED in part; and it is further

ORDERED that Plaintiffs' claims against Defendants Randall, Devlin, Holderied, Leon, Bliss, Estling, and Hathaway are DISMISSED with prejudice; and it is further

ORDERED that the following claims may proceed: 1) Plaintiffs' Section 1983 claim against the Village of Lake Placid for municipal liability; and 2) Plaintiff Fletcher's Title II ADA disability discrimination claim against the Village of Lake Placid, all as discussed above; and it is further

ORDERED that Plaintiffs' Cross-Motion to Strike (Dkt. No. 73) is DENIED; and it is further

ORDERED that the Northwood Defendants' Motion to Dismiss (Dkt. No. 74) is GRANTED; and it is further

---

[19] The Court notes that Plaintiffs have not sought leave to amend in connection with the pending motions, that Plaintiffs have already amended in response to almost identical motions from Defendants, *see* Dkt. Nos. 43, 59, and that they have failed to identify any basis to believe that further amendment would assist in stating other viable claims.

**ORDERED** that Plaintiffs' federal claims against the Northwood Defendants are **DISMISSED with prejudice**; and it is further

**ORDERED** that Defendant Brooks's Motion to Dismiss (Dkt. No. 76) is **GRANTED**; and it is further

**ORDERED** that Plaintiffs' federal claims against Defendant Brooks are **DISMISSED with prejudice**; and it is further

**ORDERED** that the Burke Defendants' Motion to Dismiss (Dkt. No. 80) is **GRANTED**; and it is further

**ORDERED** that Plaintiffs' federal claims against the Burke Defendants are **DISMISSED with prejudice**; and it is further

**ORDERED** that the Bette & Cring Defendants' Motion to Dismiss (Dkt. No. 82) is **GRANTED**; and it is further

**ORDERED** that Plaintiffs' federal claims against the Bette & Cring Defendants are **DISMISSED with prejudice**; and it is further

**ORDERED** that the O'Neil Defendants' Motion for Judgment on the Pleadings (Dkt. No. 105) is **GRANTED;** and it is further

**ORDERED** that Plaintiffs' federal claims against the O'Neil Defendants are **DISMISSED with prejudice;** and it is further

**ORDERED** that the Court declines to exercise supplemental jurisdiction over Plaintiffs' state law trespass and private nuisance claims against the Northwood Defendants, Defendant Brooks, the Burke Defendants, the Bette & Cring Defendants and the O'Neil Defendants, and those claims are **DISMISSED without prejudice** as to those Defendants.

   **IT IS SO ORDERED.**

Dated: <u>December 11, 2023</u>
         Syracuse, New York

Brenda K. Sannes
Chief U.S. District Judge